Jonathan M. Lebe (State Bar No. 284605)
Jon@lebelaw.com
Annaliz Loera (State Bar No. 334129)
Annaliz@lebelaw.com
**Lebe Law, APLC**
777 S. Alameda Street, Second Floor
Los Angeles, CA 90021
Telephone: (213) 444-1973
Facsimile: (213) 457-3092

**HAINES LAW GROUP, APC**
Paul K. Haines (SBN 248226)
phaines@haineslawgroup.com
Tuvia Korobkin (SBN 268066)
tkorobkin@haineslawgroup.com
Neil M. Larsen (SBN 276490)
nlarsen@haineslawgroup.com
2155 Campus Drive, Suite 180
El Segundo, California 90245
Tel: (424) 292-2350
Fax: (424) 292-2228

Attorneys for Plaintiff, the Class
And Aggrieved Employees

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Sharon Britt, Andre Wall, Joshua Blalock, and Jade Ball, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>Southern California Edison Company,<br><br>Defendant. | Case No.: 2:20-cv-08023-FMO (ASx)<br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Judge: Hon. Fernando M. Olguin<br>Date: January 20, 2022<br>Time: 10:00 a.m.<br>Dept.: 6D<br><br>Complaint Filed: September 2, 2020<br>Trial Date: None Set |

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

NOTICE IS HEREBY GIVEN that on January 20, 2022 at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 6D of the United States District Court for the Central District of California, located at 350 West 1st Street, Los Angeles, California 90012, before the Honorable Fernando M. Olguin, Plaintiff Jade Ball, as an individual and on behalf of all others similarly situated, will and hereby does move this Court for entry of an Order pursuant to Fed. R. Civ. Proc. 23(e) and 29 U.S.C. § 216(b):

1. Preliminarily certifying under Rule 23(e) of the Federal Rules of Civil Procedure, the proposed Settlement Class, which includes the following individuals:

   > Any current or former non-union represented, non-exempt employee of Southern California Edison Company ("Edison" or "Defendant") who worked for Defendant in California from April 6, 2016 to November 23, 2021 (the "Class Period").

2. Preliminarily appointing Jade Ball as the Class Representative for settlement purposes;

3. Preliminarily appointing Jonathan M. Lebe and Annaliz Loera of Lebe Law, APC, and Paul K. Haines, Tuvia Korobkin, and Neil M. Larsen of Haines Law Group, APC, as Class Counsel for settlement purposes;

4. Preliminarily approving the class action settlement based upon the terms set forth in the Class, Collective, and Representative Action Settlement Agreement and Release (the "Settlement");

5. Appointing ILYM Group, Inc., as the third-party settlement administrator for mailing notices and otherwise administering the Settlement;

6. Approving the proposed Class Notice, and directing that it be disseminated to the proposed Settlement Class as provided in the Settlement; and

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

7. Scheduling a final fairness hearing to consider final approval of the Settlement, entry of a proposed final judgment, Plaintiff's Motion for Reasonable Attorneys' Fees and Costs, and the Class Representative's Service Award.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the declaration of Paul K. Haines and exhibits attached thereto, the declaration of Jon Lebe, the declaration of Plaintiff, the declaration of Sean Hartranft of ILYM Group, Inc. and the exhibits attached thereto, the pleadings and other papers filed in this action, and on any further oral or documentary evidence or argument presented at the time of hearing.

Respectfully submitted,

Dated:  December 15, 2021                    **HAINES LAW GROUP, APC**

By:    _____
Paul K. Haines, Esq.
Attorneys for Plaintiff

# **TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................1

II. FACTUAL SUMMARY .......................................................................2

   A. Plaintiff's Claims and Procedural History ....................................2

III. THE SETTLEMENT MERITS PRELIMINARY APPROVAL.........................5

   A. The Settlement Is Fair, Reasonable, and Adequate .......................5

     1. The Strength of Plaintiff's Case.......................................5

     2. Risk, Expense and Duration of Further Litigation..................6

     3. Risk Maintaining Class Action Status ...............................6

     4. The Amount of Settlement is Reasonable and Significant ........6

     5. Discovery Completed and the Status of Proceedings ..............14

     6. The Experience and Views of Counsel................................14

   B. The Preliminary Approval Standard Is Met ...............................15

     1. The Settlement is Within the Range of Possible Approval ....................15

     2. The Settlement Resulted From Arm's-Length Negotiations.................15

     3. The Settlement is Devoid of Obvious Deficiencies................................16

      a. Settlement Provides Significant Monetary Recovery........................16

      b. Settlement Formula.............................................17

      c. Incentive Payment, Attorney's Fees, and Costs.................................18

IV.  THE SETTLEMENT MERITS CERTIFICATION .......................................19

   A. Rule 23(a)(1) Numerosity Is Satisfied....................................19

   B. Rule 23(a)(2) Commonality Is Satisfied..................................19

   C. Rule 23(a)(3) Typicality Is Satisfied.....................................19

   D.  Rule 23(a)(4) Adequacy Is Satisfied....................................19

   E.  Rule 23(b)(3) Predominance Is Satisfied ...............................20

   F.  FLSA Certification Is Also Warranted....................................20

V. THE PROPOSED NOTICE OF PROCESS SATISFIES DUE PROCESS ......21

VI. CONCLUSION.................................................................................22

i

## <u>TABLE OF AUTHORITIES</u>

**<u>Federal Cases</u>**

*Amchem v. Windsor*, 521 U.S. 591 (1997)...............................................20

*Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566 (9th Cir. 2004) ........21

*Cooper v. Southern California Edison Co.*, 170 Fed.Appx. 496 (9th Cir. 2006).....7

*Eisen v. Carlisle & Jacqueline*, 417 U.S. 156 (1974)..............................21

*Franklin v. Kaypro Corp.*, 884 F.2d 1222 (9th Cir. 1989) ......................5

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ............................ 19, 20

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ...........18

*In re Pac. Enter. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) ......................14

*Leyva v. Medline Indus., Inc.*, 716 F.3d 510 (9th Cir. 2013)...................................19

*Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350 (11th Cir. 1982) ........................20

*Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468 (E.D. Cal. 2010) ......................21

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*

    221 F.R.D. 523 (C.D. Cal. 2004)...............................................14

*Patel v. Nike Retail Svcs., Inc.*, 58 F.Supp.3d 1032 (N.D. Cal. 2014) ...................11

*Plaintiffs v. Seattle,* 955 F.2d 1268 (9th Cir. 1992)..........................................15

*Rodriguez v. West Publishing Corp.*, 563 F.3d at 963............................... 5

**<u>State Cases</u>**

*Amaral v. Cintas Corp. No. 2*, 163 Cal.App.4th 1157 (2008)................................11

*Brinker Restaurant Corp. v. Superior Court,* 53 Cal.4th 1004 (2012)................. 7, 8

*Carrington v. Starbucks Corp.*, 30 Cal.App.5th 504 (2018) ................................13

*Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal.4th 554 (2007)...........................9

*Kao v. Joy Holiday*, 12 Cal.App.5th 947 (2017) ...............................................12

*Kirby v. Immoos Fire Protection, Inc.*, 53 Cal.4th 1244 (2012) ............................11

*Ling v. P.F. Chang's China Bistro, Inc.*, 245 Cal.App.4th 1242 (2016)...............11

*Maldonado v. Epsilon Plastics, Inc.*, 22 Cal.App.5th 1308 (2018)........................11

*Price v. Starbucks Corp.*, 192 Cal.App.4th 1136 (2011)........................................12

*Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal.App.4th 1112 (2012) .............13

*Wesson v. Staples the Office Superstore, LLC*, 68 Cal.App.5th 746 (2021) ..........13

*ZB, N.A. v. Sup. Ct.*, 8 Cal.5th 175 (2019) ................................................13

**Federal Statues & Rules**

29 U.S.C. § 207 .................................................................................2

29 U.S.C. § 206 .................................................................................2

Fed. R. Civ. Proc. 23 ....................................................................3, 21

Fed. R. Civ. Proc. 23(e)(2).................................................................5

Rule 23(a)(3) ...................................................................................19

Rule 23(a)(4) ...................................................................................19

**State Statutes and Rules**

8 Cal. Code Regs. § 13520.................................................................12

Cal. Labor Code §§ 201-203.........................................................2, 3, 12

Cal. Labor Code §§ 204 ......................................................................3

Cal. Labor Code §§ 204(a).....................................................................2

Cal. Labor Code §§ 210 .......................................................................3

Cal. Lab. Code § 226 .....................................................................3, 10

Cal. Lab. Code § 226(a) .......................................................................3

Cal. Lab. Code § 226(e) ......................................................................11

Cal. Lab. Code § 226.3 ........................................................................3

Cal. Lab. Code § 226.7 ....................................................................2, 3

Cal. Lab. Code § 226.7(b) ....................................................................2

Cal. Lab. Code § 227.3 ........................................................................3

Cal. Lab. Code § 246 ..........................................................................3

Cal. Lab. Code § 246(b)(1) ..................................................................3

Cal. Labor Code §§ 510 ....................................................................2, 3

Cal. Labor Code §§ 512 .......................................................................3

Cal. Labor Code §§ 558 .......................................................................2

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

Cal. Labor Code §§ 1174 ...............................................................3

Cal. Labor Code §§ 1182 ...............................................................3

Cal. Labor Code §§ 1194 ............................................................2, 3

Cal. Labor Code §§ 1194.2 ............................................................3

Cal. Labor Code §§ 1197 ...............................................................3

Cal. Labor Code §§ 1198 ...............................................................3

Cal. Lab. Code § 2699.3 ................................................................2

Cal. Lab. Code § 2800 ...................................................................3

Cal. Lab. Code § 2802 ..............................................................2, 3

**<u>Unpublished Cases</u>**

*Barbosa v. MediCredit, Inc.*
      No. EDCV 14-00063-VAP(SPx), 2015 WL 1966911 (C.D. Cal. 2015) ... 17

*Fleming v. Covidien, Inc.*
      No. ED-CV-10-01487-RGK (OPx), 2011 WL 7563047
      (C.D. Cal. Aug. 12, 2011)......................................................13

*Franco v. Ruiz Food Prods. Inc.*
      No. 1:10-cv-02354-SKO, 2012 WL 5941801 (E.D. Cal. 2012) .................17

*Gribble v. Cool Transports Inc.*
      No. CV 06-04863 GAF (SHx), 2008 WL 5281665 (C.D. Cal. 2008) .........15

*In re First Capital Holdings Corp. Financial Prods.*, MDL
      No. 901, 1992 WL 226321 (C.D. Cal. 1992) .............................................16

*In re Portal Software, Inc. Sec. Litig.*
      No. C-03-5138 VRW, 2007 WL 4171201 (N.D. Cal. 2007) ...................... 6

*Lazarin v. Pro Unlimited, Inc.*
      No. C11-03609 HRL, 2013 WL 3541217 (N.D. Cal. 2013).........................17

*Schiller v. David's Bridal*
      No. 1:10-cv-00616, 2012 WL 2117001 (E.D. Cal. 2012)............................17

*Sorenson v. PetSmart, Inc.*
      No. 2:06-CV-02674 (E.D. Cal. 2008) ........................................................17

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

*Viceral v. Mistras Grp., Inc.*

     No. 15-cv-02198-EMC, 2016 WL 5907869 (N.D. Cal. 2016) ....................14

**<u>Other Sources</u>**

Violation of Business & Professions Code § 17200 .............................................. 3, 4

Manual for Complex Litigation § 30.41 (3rd Ed. 1995)...................................... 5,15

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

**MEMORANDUM OF POINTS AND AUTHORITIES**

# I.   INTRODUCTION

Plaintiff Jade Ball ("Plaintiff"), individually on behalf of the proposed Settlement Class, requests that this Court preliminarily approve the Class, Collective, and Representative Action Settlement Agreement and Release ("Settlement") entered into by and between Plaintiff and Defendant Southern California Edison Company ("Edison" or "Defendant").[1]

Plaintiff's claims stem from Edison's alleged failure to pay minimum and overtime wages, meal and rest period violations, failure to reimburse necessary business expenses, failure to furnish accurate wage statements, and failure to timely pay final wages. Under the Settlement, Edison has agreed to pay a non-reversionary Maximum Gross Settlement Amount ("GSA") of $3,222,500 to resolve Plaintiff's and Settlement Class members' claims on a class and collective basis. *See* Settlement, §§ II.16; IV.C. After deductions for Court-approved attorneys' fees and costs, the Class Representative Service Award, and Settlement Administration Costs to the Settlement Administrator the Net Settlement Amount shall be paid to all Participating Class Members, based primarily on their respective number of Workweeks worked during the Class Period. *Id.*, §§ II.19; IV.D.

This proposed settlement came to fruition only after robust legal research and analysis; extensive investigation by the Parties and by Class Counsel; the exchange of extensive class-wide data and analysis of that data; arm's-length settlement negotiations at a private mediation session with Gig Kyriacou, Esq., an experienced wage and hour class action mediator; as well as extensive negotiations after the mediation, which eventually led to the Settlement.

This settlement provides substantial recovery on Edison's alleged wage and hour violations. The average payment to Settlement Class Members is estimated at

---

[1] The Settlement is attached as Exhibit 1 to the Declaration of Paul K. Haines ("Haines Decl."). The proposed Class Notice is attached as Exhibit A to the Settlement Agreement.

1

approximately $442.30, a favorable result considering the formidable defenses that Plaintiff faced on her claims. Based on the litigation risks involved, Plaintiff submits the proposed Settlement is well within the range of possible approval. Moreover, the Settlement is the product of an informed and thoroughly-vetted analysis of the claims and defenses, as well as the likelihood of obtaining class certification, and arm's-length settlement negotiations by experienced employment counsel.

## II.   FACTUAL SUMMARY

### A.   Plaintiff's Claims and Procedural History

On September 2, 2020, Sharon Britt filed the original Complaint. Declaration of Jon M. Lebe ("Lebe Decl."), ¶ 10; *see also* Dkt. 1. The original Complaint alleged causes of action as a collective action under the FLSA: (1) Failure to Pay Overtime Wages in Violation of 29 U.S.C. § 207 and (2) Failure to Pay Minimum Wages in Violation of 29 U.S.C. § 206. *Id*.

On September 2, 2020, Sharon Britt and Andre Wall filed a Notice with the Labor & Workforce Development Agency ("LWDA") under the California Private Attorneys General Act ("PAGA") (Cal. Lab. Code § 2699.3) for alleged violations of the California Labor Code including: (1) Unlawful failure to pay all earned wages through Cal. Labor Code §§ 510, 1194, 204(a) and the applicable IWC Wage Order; (2) Unlawful failure to pay overtime through Cal. Labor Code §§ 201-203, 510, 1194, 558 and applicable IWC Wage Order; (3) Unlawful failure to pay minimum wage through Cal. Labor Code §§ 1194, 1197, 1197.1, 558, 201-203 and the applicable IWC Wage Order; (4) Unlawful failure to provide uninterrupted off-duty meal periods through Cal. Labor Code §§ 226.7, 512, 201-203, 226.7(b), 512, 558 and the applicable IWC Wage Order; (5) Unlawful failure to provide uninterrupted off-duty rest periods through Cal. Labor Code §§ 201-203, 226.7, 226.7, 512 and the applicable IWC Wage Order; (6) Unlawful failure to reimburse business expenses through Cal. Labor Code §§ 2802 and 558; (7) Unlawful failure to furnish

wage statements through Cal. Labor Code §§ 226(a) and 226.3; (8) Failure to provide sick pay through Cal. Labor Code § 246, 246(b)(1); and (9) Unlawful failure to pay final wages/vacation wages through Cal. Labor Code §§ 201-203 and 227.3. Lebe Decl., ¶ 11.

On November 9, 2020, Sharon Britt filed a First Amended Complaint ("FAC") adding nine causes of action under Fed. R. Civ. Proc. Rule 23 and a cause of action requesting PAGA penalties. Lebe Decl., ¶ 12; Dkt. 11. The added causes of action included: (1) Failure to pay minimum wages in violation of Cal. Labor Code §§ 1182.12, 1194, 1194.2, 1197 and IWC Wage Order § 3; (2) Failure to pay overtime wages in violation of Cal. Labor Code §§ 510, 1194, and 1198 and IWC Wage Order; (3) Failure to timely pay all earned wages in violation of Cal. Labor Code §§ 204, 210 and IWC Wage Order; (4) Failure to provide meal periods in violation of Cal. Labor Code §§ 226.7 and 512, and IWC Wage Order; (5) Failure to permit rest breaks in violation of Cal. Labor Code §§ 226.7 and IWC Wage Order; (6) Failure to provide accurate itemized wage statements in violation of Cal. Labor Code § 226 and IWC Wage Order; (7) Failure to pay all wages due upon separation of employment and within the required time in violation of Cal. Labor Code §§ 201-203 and IWC Wage Order; (8) Failure to reimburse all business expenses in violation of Cal. Labor Code §§ 2800 and 2802; (9) Violation of Business & Professions Code §§ 17200, *et seq.*, and (10) PAGA civil penalties. *Id*.

On April 23, 2021, Sharon Britt and Andre Wall, along with Joshua Blalock and Plaintiff Ball, submitted an Amended PAGA Notice to the LWDA which added allegations to their claims of violations. Lebe Decl., ¶ 13. On May 13, 2021, Sharon Britt, Andre Wall, Joshua Blalock, and Plaintiff Ball filed a second Amended PAGA Notice with the LWDA to add a claim under Cal. Labor Code § 1174 for failure to furnish wage statements and keep accurate records. Lebe Decl., ¶ 14.

On June 25, 2021, a Second Amended Complaint ("SAC") was filed for violations of the California Labor Code, Fair Labor Standards Act, and Industrial

Welfare Commission Wage Order after receiving leave from the Court. Lebe Decl., ¶ 15; Dkt. 46. The SAC added Andre Wall, Joshua Blalock, and Plaintiff Ball as named plaintiffs and added additional factual allegations. *Id*.

On July 30, 2021, after a stipulation by the Parties and the Court granting leave, a Third Amended Complaint ("TAC") was filed for violations of the California Labor Code, Fair Labor Standards Act, and Industrial Welfare Commission Wage Order, including the following causes of action:: (1) Failure to pay minimum wages (FLSA); (2) Failure to pay overtime wages (FLSA); (3) Failure to pay minimum wages; (4) Failure to pay overtime wages; (5) Failure to timely pay all earned wages; (6) Failure to provide meal periods; (7) Failure to permit rest breaks; (8) Failure to provide accurate itemized wage statements; (9) Failure to pay all wages due upon separation of employment and within the required time: (10) Failure to reimburse all business expenses; (11) Violation of Business & Professions Code § 17200, *et seq.*; and (12) PAGA civil penalties. Lebe Decl., ¶ 16; Dkt. 57.

On August 11, 2021, after months of engaging in both formal and informal discovery, motion practice, and extensive litigation, the Parties participated in an arm's-length mediation with Gig Kyriacou, Esq., an experienced wage and hour class action mediator. Haines Decl., ¶ 13; Lebe Decl., ¶¶ 17-19. Although the case did not settle at mediation, Mr. Kyriacou made a mediator's proposal that was ultimately accepted by the parties. *Id*. The parties worked over the following months to finalize the finer points of the Settlement Agreement that is now before the Court. In settling this case, the parties agreed to settle the claims of the non-union employees, and dismiss the claims of the union represented employees without prejudice because Plaintiff's counsel reviewed the Collective Bargaining Agreement ("CBA") applicable to the union employees and determined that the CBA governed the claims alleged, and would likely prohibit Plaintiff's counsel from settling claims on behalf of the union employees. Haines Decl., ¶ 13.

## III.   THE SETTLEMENT MERITS PRELIMINARY APPROVAL

It is the policy of the federal courts to encourage settlement. *See Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1225 (9th Cir. 1989). Judicial approval of a class action settlement entails a two-step process: (1) an early (preliminary) review by the Court; and (2) a final review after notice has been distributed to the class members for their comment or objections. *See* Manual for Complex Litigation § 30.41 (3rd Ed. 1995).

### A.   The Settlement Is Fair, Reasonable, and Adequate

To receive judicial approval, a proposed class action settlement must be "fair, reasonable, and adequate." *See* Fed. R. Civ. Proc. 23(e)(2). In making this determination, this Court may consider the following factors: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *See Rodriguez v. West Publishing Corp.,* 563 F.3d 948, 963 (9th Cir. 2003).  Plaintiff addresses each relevant factor below.[2]

#### 1.   The Strength of Plaintiff's Case

Although she maintains her claims are meritorious, Plaintiff acknowledges there were substantial risks and uncertainty in proceeding with class certification and eventual trial on the merits. As described in section III.A.4, *infra*, Edison presented multiple defenses to Plaintiff's claims, both on the merits and as to class certification. While Plaintiff was prepared to litigate her claims through class certification and ultimately trial, success was far from certain.

---

[2] Because there are no government participants in the instant lawsuit, Plaintiff has omitted the seventh factor from discussion. Should the Court grant preliminary approval of the Settlement, such that notice is given to the Settlement Class Members, Plaintiff will address the eighth factor in the motion for final approval.

### 2. Risk, Expense and Duration of Further Litigation

Although the parties engaged in significant informal and formal discovery, investigation, and classwide data analysis, they had not completed formal discovery. Haines Decl., ¶¶ 12, 28. Edison had also filed a Motion to Dismiss several of the claims alleged in the TAC (Dkt. 58), which was pending at the time the parties reached the Settlement. *Id*. Preparation for class certification and trial remained for the parties, as well as the prospect of potential appeals. *Id*. Thus, the parties would incur considerably more attorneys' fees and costs through trial. This settlement avoids those risks and accompanying expense. *See In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 4171201 at *3 (N.D. Cal. 2007) ("inherent risks of proceeding to summary judgment, trial and appeal also support the settlement"). Thus, this factor favors preliminary approval.

### 3. Risk of Maintaining Class Action Status

Plaintiff had not yet moved for class certification. *Id*. Absent settlement, there was a risk that there would not be a certified class at the time of trial, and that the Settlement Class members would not recover anything. Haines Decl., ¶ 12. As discussed *infra*, Edison asserted several defenses to class certification which raised substantial risks associated with certifying the class. Thus, this factor also supports preliminary approval.

### 4. The Amount of Settlement is Reasonable and Significant

This proposed settlement provides substantial monetary recovery for Settlement Class Members in the face of disputed claims. As detailed below, Plaintiff believes this settlement represents a recovery of about 76% of the projected realistic recovery if this case were to proceed through certification and trial:

a. <u>Meal Period Violations</u>: **$719,768**

Plaintiff contends that Settlement Class members were not provided meal periods as required under California law, and specifically that meal periods were occasionally missed or provided late (i.e., beginning after 5 hours of work), and that

Edison failed to provide second meal periods. Haines Decl., ¶ 16. However, Plaintiff's investigation revealed that only 9% of shifts included a non-compliant first meal period. Plaintiff's investigation also revealed that 88% of shifts over 12 hours with no second meal period were preempted, because they occurred on federal enclaves such as the San Onofre Nuclear Generating Station. *Id*. at ¶ 16; *See, e.g., Cooper v. Southern California Edison Co.*, 170 Fed.Appx. 496, 497-98 (9th Cir. 2006) (holding certain California employment claims could not be brought against Southern California Edison when they arose at the San Onofre Nuclear Generating Station, under the federal enclave doctrine). Given the extremely low rate of non-compliant first meal periods, Plaintiff believed that the possibility of certifying Plaintiff's first meal claim was nominal. *Id*. at ¶ 16. Plaintiff also believed that the possibility of certifying and prevailing on her second meal period claim was very low, as it was nearly completely preempted by the federal enclave doctrine. *Id*.

Edison also argues it has always maintained a legally-compliant meal period policy, has always provided meal periods consistent with that policy, and that it is only required to "provide" the opportunity to take meal periods, not "ensure" they are taken. Haines Decl. ¶ 16; *Brinker Restaurant Corp. v. Superior Court,* 53 Cal.4th 1004, 1038 (2012) (rejecting "ensure" standard). Further, as noted above, the timekeeping data provided by Edison revealed only 9% of first meal periods were non-compliant, which Edison argues demonstrates that employees generally receive first meal periods and that any meal period violations reflected in the records were a result of lawful employee waiver or choice, rather than any Edison policy or practice, thereby precluding liability. Haines Decl. ¶ 16. Edison also points to the fact that it has paid over 4,500 meal period premiums as further evidence that it takes its meal period obligations seriously, and that any missed meals are aberrations, not a result of any Edison policy or practice. *Id*. Finally, Edison argues individualized inquiries would be needed to determine whether each employee missed or took a late meal period on each shift, *why* any given meal period was

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

taken late or missed, and whether the employee validly waived the meal period, thereby making certification of this claim unlikely. *Id*. In light of these defenses, Plaintiff assessed a 75% risk of non-certification and an additional 65% risk of losing on the merits, to arrive at a projected realistic exposure of $719,768. *Id*.

### b. Rest Period Violations: **$210,600**

Plaintiff alleges that Edison failed to authorize and permit all legally-compliant rest periods throughout the Class Period. Haines Decl., ¶ 17. Edison argues it has always maintained and enforced lawful rest period policies and practices during the Class Period. *Id*. Edison also maintains that any failure to take rest periods was the result of employee choice, and that it is not required to police rest periods, only to authorize and permit them as established in *Brinker*, *supra*, 53 Cal.4th at 1040 (finding that an employer is not obligated to police meal and rest periods). *Id*. Finally, Edison contends that Plaintiff's rest period claim is not amenable to class treatment as individualized inquiries would be required to determine which employees failed to take rest periods, and the reasons why each employee failed to take a rest period on a particular shift. *Id*. These considerations are particularly present with respect to rest periods, Edison argues, as rest periods are not – and need not be – recorded. *Id*. In light of these defenses, Plaintiff assessed a 75% risk of non-certification, and an additional 55% for risk of being unsuccessful on the merits or failure to recover a rest period premium for each and every shift, to arrive at a projected exposure of $210,600. *Id*.

### c. Failure to Reimburse Business Expenses: **$546,910**

Plaintiff contends that Edison required Settlement Class members to use their personal cellphones and home internet services for work-related purposes, but were not reimbursed for these all of these expenses. Haines Decl., ¶ 18. Plaintiff's Counsel estimated that Settlement Class members' expended $25 per month during the Class Period in reasonable work-related usage. *Id*. However, Edison argues that this claim would require individual inquiries into whether Settlement Class

Members actually used their personal cellular phones and home internet service for work purposes, how much expense they incurred, whether they submitted a request for reimbursement, and the reasonableness of that expense, thus precluding class certification. *Id.*; *see also*, *e.g.*, *Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal.4th 554, 568 (2007) ("In calculating the reimbursement amount due under section 2802, the employer may consider not only the actual expenses that the employee incurred, but also whether each of those expenses was 'necessary,' which in turn depends on the reasonableness of the employee's choices"). Moreover, Edison produced evidence that it in fact paid Settlement Class members a $20 per month stipend for home internet services starting on October 16, 2020, which Edison contends is more than adequate to cover any "reasonable" work-related home Internet or cell phone expense. *Id.* Based on these defenses, Plaintiff assessed an 80% chance of that this claim would not be certified and a 60% chance of losing on the merits or failure to recover the full amount, to arrive at a projected exposure of $546,910. *Id.*

d. Unpaid Wages Due to Timekeeping Policies/Practices: **$205,044**

Plaintiff also alleges that Edison's timekeeping policies and/or practices resulted in an underpayment of wages, in that Edison required employees to input their scheduled start and end times on their time records rather than their actual hours worked, resulting in uncompensated off-the-clock work. Haines Decl., ¶ 19. Based on Plaintiff's and other employees' experience and analysis of Edison's timekeeping and payroll data, Plaintiff estimates that employees were underpaid by approximately 7 minutes per shift, which results in approximately 34,174 unpaid hours during the Class Period. *Id.* Edison contends that it maintained lawful timekeeping policies and/or practices, expressly prohibited off-the-clock work, and compensated employees for all hours actually worked. *Id.* Edison also asserts that this claim is not amenable to class certification as individualized inquiries would be required to determine whether each employee performed off-the-clock work on a

particular shift, and whether Edison was aware that such work was being performed. *Id*. In light of Edison's arguments and defenses, Plaintiff attributed a 75% chance that this claim would not be certified, and an additional 50% chance that she would not succeed on the merits, for a projected exposure of $205,044. *Id*.

### e. Unpaid Overtime Wages Based on Regular Rate Miscalculation: **$2,500**

Plaintiff alleges that Edison underpaid overtime wages due to its failure to include all remuneration in the regular rate of pay for overtime purposes. Haines Decl., ¶ 20. Specifically, Plaintiff alleges that Edison did not include shift differentials/premiums, "meal allowances," "in lieu meals," commissions, bonuses, and other non-discretionary pay into the regular rate of pay for overtime purposes. *Id*. However, this claim overwhelmingly pertained to union-represented employees. *Id*. Plaintiff's counsel reviewed the CBA applicable to union-represented employees and determined that it would likely be found enforceable, and would therefore likely exempt Edison from providing overtime wages to its union-represented employees. *Id*. For this reason, as noted above, the parties agreed to settle claims on behalf of only non-union represented employees and dismiss without prejudice the claims of union-represented employees. With respect to non-union represented employees, Plaintiff estimate that the amount of unpaid overtime wages owing due to a miscalculation of the overtime rate is approximately $2,500.

### f. Wage Statement Penalties: **$814,165**

As a result of the violations alleged above, Plaintiff alleges that Edison furnished inaccurate wage statements in violation of Labor Code § 226, resulting in a $50 violation per pay period during the relevant time period. Haines Decl., ¶ 21; *see also* Cal. Labor Code § 226(e) (providing for $50 penalty for "initial" violations); *Amaral v. Cintas Corp. No. 2*, 163 Cal.App.4th 1157, 1207 (2008) (finding "initial" violation rate applies until employer is notified it violated a Labor Code provision); *Patel v. Nike Retail Svcs., Inc.*, 58 F.Supp.3d 1032, 1042-43 (N.D.

10

Cal. 2014) (citing *Amaral* and applying "initial" $50 penalty to all pay periods in calculating amount-in-controversy for wage statement claim).. *Id.*

However, Edison argues that any alleged wage statement violations were not "knowing and intentional," and that Plaintiff cannot show she or other employees "suffer[ed] injury" due to alleged wage statement violations, as required to recover penalties under Section 226(e). Edison also contends that Plaintiff's meal and rest period claims cannot support wage statement penalties after *Kirby v. Immoos Fire Protection, Inc.*, 53 Cal.4th 1244 (2012), which held meal and rest period claims are not actions for "nonpayment of wages," a view adopted in *Ling v. P.F. Chang's China Bistro, Inc.*, 245 Cal.App.4th 1242, 1261 (2016) ("Following Kirby, section 226.7 cannot support a section 203 penalty"), and which issue is set to be decided by the California Supreme Court in *Naranjo v. Spectrum Security Servs., Inc.*, No. S258966 (review granted Jan. 2, 2020) (holding that meal and rest period claims cannot form basis for waiting time or wage statement penalties). Further, Edison contends its wage statements always accurately reflected amounts *paid* to employees as well as all other required information, precluding liability for wage statement penalties under *Maldonado v. Epsilon Plastics, Inc.*, 22 Cal.App.5th 1308, 1336-37 (2018) (agreeing with employer's "commonsense position that the pay stubs were accurate in that they correctly reflected the hours worked and the pay received…The purpose of section 226 is to *document* the paid wages to ensure the employee is fully informed regarding the calculation of those wages.") (italics in original). Edison further argues the same defenses to class certification as to Plaintiff's underlying claims apply equally to her derivative wage statement claims, and that additional individualized inquiries would be needed to determine whether each employee "suffered injury" under Section 226(e) and thus eligible for wag statement penalties. Thus, Plaintiff discounted this claim by 65% for a risk of non-certification and an additional 70% for risk of losing on the merits, for a projected exposure of $814,165. *Id.*

### g.  Waiting Time Penalties: **$601,574**

Plaintiff alleges that Edison is liable for waiting time penalties under Labor Code § 203 to former employees whose employment with Edison ended since April 6, 2017. Haines Decl., ¶ 22. However, Edison asserts that it has strong defenses to the waiting time claim because there exist good-faith disputes as to Plaintiff's underlying claims preclude imposition of penalties. Haines Decl., ¶ 22, *see* 8 Cal. Code Regs. § 13520 (a "good faith dispute that any wages are due will preclude imposition of waiting time penalties"); *Kao v. Joy Holiday,* 12 Cal.App.5th 947, 963 (2017) (holding "good faith dispute" over employee's exempt status precluded imposition of waiting time penalties over contested wages). Edison further contends Plaintiff's meal and rest period claims – which comprise the majority of the liability for her underlying claims – cannot support waiting time penalties, which is an issue in dispute that is set to be decided by the California Supreme Court in *Naranjo v. Spectrum Security Servs., Inc.*, as described *supra*. Haines Decl., ¶ 22. Edison also asserts that the same class certification and merits defenses apply to Plaintiff's derivative waiting time claim. *Id*. Accordingly, Plaintiff believed that there was a 70% chance this claim would not be certified, and an additional 65% chance this claim would not succeed on the merits or failure to recover the full amount sought, to arrive at an estimated exposure of $601,574. *Id*.

### h.  PAGA Penalties: **$1,092,390**

Plaintiff alleges that Edison is liable for civil penalties derived from the underlying violations discussed herein. *Id*., ¶ 23. As noted above, however, Edison vigorously disputes each of Plaintiff's underlying claims, and argues that the PAGA claim fail because Plaintiff's underlying claims fail. *See Price v. Starbucks Corp.*, 192 Cal.App.4th 1136, 1147 (2011) ("Because the underlying causes of action fail, the derivative UCL and PAGA claims also fail."). Edison also argues that the PAGA claim would not be manageable, since individual inquiries would be needed to determine, *inter alia*, whether employees actually received and/or waived their

meal period(s) or rest period(s) on any given shift, and whether each employee was reimbursed for all necessary business expenses. Haines Decl., ¶ 23; *see Wesson v. Staples the Office Superstore, LLC*, 68 Cal.App.5th 746 (2021) (affirming trial court's striking of PAGA claim, based on unmanageability of PAGA trial due to individualized questions among individual aggrieved employees). Additionally, Edison maintains that, given its good-faith defenses, the Court would substantially reduce any PAGA civil penalties. Haines Decl., ¶ 23; *see also* Lab. Code § 2699(e)(2) (authorizing reduction in PAGA penalties in court's discretion); *Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal.App.4th 1112, 1135 (2012) (affirming reduction of PAGA penalties) (*disapproved on other grounds in ZB, N.A. v. Sup. Ct.*, 8 Cal.5th 175, FN8 (2019)); *Fleming v. Covidien, Inc.*, No. ED-CV-10-01487-RGK (OPx), 2011 WL 7563047 at *4 (C.D. Cal. Aug. 12, 2011) (reducing PAGA penalties by over 82%); *Carrington v. Starbucks Corp.*, 30 Cal.App.5th 504, 529 (2018) (affirming PAGA civil penalty of just $5 per pay period where employer made "good faith attempts" to comply with the law).

Based on these risks, Plaintiff believed that there was a 75% risk of losing on the merits and an additional 70% chance that this Court reducing penalties or failing to recover a penalty on each and every pay period, to arrive at an estimated total of $1,092,390. *Id.*; *see also Thurman*, *supra*, 203 Cal.App.4th at 1135-36 (affirming reduction of PAGA penalties); *Fleming*, *supra*, 2011 WL 7563047 at *4 (reducing PAGA penalties by over 82%); *Carrington*, *supra*, 30 Cal.App.5th at 529 (affirming PAGA penalty of just $5 per pay period).

### i.   Total Classwide Damages:

Using these figures, Plaintiff estimates that the total realistic recovery would be approximately $4,192,951. Haines Decl., ¶ 24. Thus, the $3,222,500 Maximum Settlement Amount represents approximately 76% of reasonably recoverable potential damages. *Id.*

///

The percentage of liability exposure recovered in this case exceeds percentages routinely approved by courts. *See*, *e.g.*, *Viceral v. Mistras Grp., Inc.*, No. 15-cv-02198-EMC, 2016 WL 5907869 (N.D. Cal. 2016) (approving wage and hour class action settlement amounting to 8.1% of potential damages); *Dunleavy v. Nadler*, 213 F.3d 454, 459 (9th Cir. 2000) (approving settlement which represented "roughly one-sixth of the potential recovery"); *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial"). Given the risks involved, the proposed settlement is well within the range of reasonableness.

### 5.   Discovery Completed and the Status of Proceedings

The parties engaged in significant investigation, formal classwide discovery, informal classwide discovery, and analysis prior to reaching the proposed settlement. *See* Haines Decl., ¶¶ 11-12; Lebe Decl., ¶¶ 17-18. As noted above, Edison provided detailed data regarding Settlement Class Members' compensation, hours worked, and other relevant payroll data, and Plaintiff extensively analyzed the data to come up with various exposure models. *Id.* It was only after this exchange of comprehensive data and information that the parties participated in a full-day mediation with an experienced wage and hour mediator, engaged in months of post-mediation negotiations, and ultimately reached the proposed settlement by way of a mediator's proposal. *Id.* This factor supports preliminary approval.

### 6.   The Experience and Views of Counsel

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Here, Plaintiff is represented by experienced wage and hour class action counsel who collectively have more than three decades of wage and hour class action experience,

and who have successfully served as lead counsel in certifying and settling numerous class actions both in the federal and state courts of California. *See* Haines Decl., ¶¶ 1-10; Declaration of Tuvia Korobkin ("Korobkin Decl."), ¶¶ 2-7; Declaration of Neil M. Larsen ("Larsen Decl.") ¶¶ 2-6;  Lebe Decl., ¶¶ 3-9. This factor supports preliminary approval. *See Gribble v. Cool Transports Inc.*, No. CV 06-04863 GAF (SHx), 2008 WL 5281665 at *9 (C.D. Cal. 2008) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.")

### B.    The Preliminary Approval Standard Is Met

The Court can grant preliminary approval of the Settlement and direct that notice be given if the proposed settlement: (1) falls within the range of possible approval; (2) appears to be the product of serious, informed and non-collusive negotiations; and (3) has no obvious deficiencies. *See Manual for Complex Litigation* (3d ed. 1995) § 30.41. The Ninth Circuit also has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992).

### 1.    The Settlement is Within the Range of Possible Approval

The proposed settlement reflects a substantial recovery in light of real litigation risks on both merits and certification. Plaintiff submits that the proposed settlement is within the range of possible approval, such that notice should be provided to the Class Members so that they can consider the settlement. The Court will have the opportunity to again assess the reasonableness of the settlement after Class Members have had the opportunity to opt-out or object.

### 2.    The Settlement Resulted From Arm's-Length Negotiations

The Settlement is a result of extensive arm's-length negotiation by counsel and is thus entitled to an initial presumption of fairness. *In re First Capital Holdings Corp. Financial Prods.*, MDL No. 901, 1992 WL 226321 at *2 (C.D. Cal. 1992) ("[T]here is typically an initial presumption of fairness where the settlement was

negotiated at arm's length."). Plaintiff thoroughly vetted the claims at issue, and conducted extensive factual investigation and legal research and analysis. Haines Decl., ¶¶ 11-12; 16-22; 28; Lebe Decl., ¶¶ 17-18. The parties reached settlement only after mediating with experienced wage and hour mediator Gig Kyriacou. Haines Decl., ¶ 13; Lebe Decl., ¶ 19. The parties accepted Mr. Kyriacou's proposal, which reflected what he determined to be the fair settlement value of the case, after a full day of mediation and follow-up negotiations. *Id*. The parties then negotiated the details of the settlement for months before finalizing the Settlement. *Id*.

### 3.    The Settlement is Devoid of Obvious Deficiencies

#### a.    Settlement Provides Significant Monetary Recovery

Edison has agreed to pay a Maximum Settlement Amount of $3,222,500, which shall be distributed to Participating Class Members on a non-reversionary basis. Moreover, no Class Member will be required to submit a claim form to receive a payment. The principal terms of the Settlement are summarized below:

| | |
|---|---|
| Maximum Settlement Amount: | $3,222,500 |
| Minus Court-approved attorney's fees (25%): | $805,625 |
| Minus Court-approved costs (up to): | $45,000 |
| Minus Court-approved Service Award: | $7,500 |
| Minus settlement administration costs (up to): | $50,000 |
| Net Settlement Amount: | $2,314,375 |
| Minus Amount paid to LWDA: | $75,000 |
| **Total Amount Paid to Settlement Class**: | **$2,239,375** |

Thus, the Settlement requires Edison to pay a total of at least **$2,239,375** to Settlement Class Members. Haines Decl., ¶ 14. According to Edison, there are approximately 5,063 total Settlement Class Members. *See* Settlement, ¶ IV.K. Accordingly, the estimated average gross Individual Settlement Payment is projected at **$442.30**. Haines Decl., ¶ 15. This average recovery far exceeds recoveries in other wage and hour class action settlements.[3]

---

[3] *See, e.g., Schiller v. David's Bridal*, No. 1:10-cv-00616, 2012 WL 2117001 at *17 (E.D. Cal. 2012) (approving wage and hour settlement with average recovery of about $198.70); *Sorenson v. PetSmart, Inc.,* No. 2:06-CV-02674 (E.D. Cal. 2008) (average recovery of about $60).

### b.    Settlement Formula

The amounts for Court-approved attorney fees, litigation costs, incentive award, and administration costs will be deducted from the Maximum Settlement Amount to arrive at the Net Settlement Amount ("NSA"), which will be distributed as follows. First, $100,000 of the Net Settlement Amount ("NSA") has been designated the "PAGA Net Settlement Amount." Pursuant to Labor Code § 2699(i), 75% of that amount, or $75,000, will be paid to the LWDA, and the remaining $25,000 will be distributed *pro rata* to all Settlement Class Members who were employed by Edison at any point from September 2, 2019 through November 23, 2021 ("PAGA Period"), based on their number of pay periods worked during that period. *See* Settlement, ¶¶ II.24, IV.D.1.

The remainder of the NSA, called the Net Settlement Amount Remainder, will be distributed to all Settlement Class Members who do not opt-out of the Settlement (i.e. Participating Class Members), *pro rata* based on their respective number of workweeks worked in the Class Period. *See* Settlement, ¶ IV.D.2.

By taking into account the proportional number of workweeks and pay periods worked by Class Members, the Settlement formula compensates Class Members based on the extent of their potential injuries and their potential damages as alleged in the Complaint, and is thus fair, adequate, and reasonable.

Participating Class Members will be bound by the Settlement's terms, and will release all California Released Claims. *See* Settlement, ¶¶ II.3, II.13; IV.B; IV.D.3. Additionally, all Class Members (regardless whether they opt out) who worked for Edison during the PAGA Period will release all PAGA Released Claims. *Id.*, ¶¶ II.23; VIII.2; Finally, Participating Class Members who cash their settlement checks will also release all FLSA Released Claims. *Id.*, ¶ IV.D.3.[4]

---

[4] *See, e.g., Lazarin v. Pro Unlimited, Inc.*, No. C11-03609, 2013 WL 3541217 (N.D. Cal. 2013) (approving settlement in hybrid FLSA/state law class action where class members opt in and release FLSA claims by cashing settlement checks); *Franco v. Ruiz Food Prods.*

The Settlement is <u>non-reversionary</u>. Any Individual Settlement Payments allocated to Class Members who request exclusion, will become part of the Net Settlement Amount. Similarly, any portion of the requested attorneys' fee award, the requested Service Award, or amounts requested for Settlement administration that are not approved by the Court shall become part of the Net Settlement Amount. *See* Settlement, ¶ IV.D, IV.E, IV.G. Participating Class Members will have 120 days to cash their settlement checks. *Id.*, ¶ IV.D.4. Amounts from uncashed checks will be donated to the Friends of the Los Angeles County Law Library, as the *cy pres* recipient. *Id.* 29. Plaintiff's counsel does not have any relationship with *cy pres* recipient, Friends of the Los Angeles County Law Library. Haines Decl., ¶ 30.

### c.    Incentive Payment, Attorneys' Fees, and Costs

The proposed $7,500 Service Award to Plaintiff is also reasonable. This service award is in recognition of Plaintiff's significant contributions to this case by way of, *inter alia*, locating numerous witnesses, providing documents and information, conducting factual research, and otherwise assisting in prosecuting this litigation. As will be fully briefed at final approval, Plaintiff's requested incentive payment is intended to recognize the time and efforts that she expended for the Class, as well as the substantial risks she undertook in stepping forward as a named plaintiff in a wage and hour class action against a former employer.

Plaintiff's counsel will file a motion for attorneys' fees not to exceed 25% of the Maximum Settlement Amount, and for verified litigation costs of up to $45,000. *See* Haines Decl., ¶ 25; *see also* Settlement, ¶¶ I.16, IV.E. As will be fully briefed in Plaintiff's motion for attorneys' fees, this request is reasonable as a percentage of the Settlement and is in line with the 25% "benchmark" for attorneys' fee awards in the Ninth Circuit. *See, e.g., In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) (in Ninth Circuit, 25% is "benchmark" fee award).

---

*Inc.*, No. 1:10-cv-02354, 2012 WL 5941801 (E.D. Cal. 2012) (same); *Barbosa v. MediCredit, Inc.*, No. EDCV 14-00063-VAP, 2015 WL 1966911 (C.D. Cal. 2015) (same).

## IV.    THE SETTLEMENT MERITS CERTIFICATION

### A.    Rule 23(a)(1) Numerosity Is Satisfied

Numerosity is satisfied because, as stated, there are approximately 5,063 Class Members. Settlement, ¶ IV.K.

### B.    Rule 23(a)(2) Commonality Is Satisfied

Commonality is satisfied because there are common questions of fact and law arising from Settlement Class Members' employment with Edison, such as Edison's failure to pay overtime or minimum wages, reimburse necessary business expenses, or to provide meal and rest periods, – all of which Plaintiff contends arise from a common core of facts, as discussed above. Haines Decl., ¶ 27; Declaration of Jade Ball, ¶ 3 ("Ball Decl.").

### C.    Rule 23(a)(3) Typicality Is Satisfied

"Under [Rule 23(a)(3)'s] permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Here, Plaintiff's claims are typical of the Settlement Class. Plaintiff was employed by Edison as a non-union represented, non-exempt employee in California during the Class Period, and was subjected to Edison's uniform policies and practices. Haines Decl., ¶ 27; Ball Decl., ¶¶ 2-3. Because the proposed Settlement Class consists only of other non-union represented, non-exempt employees like Plaintiff, and because Plaintiff's claims stem from Edison's policies and practices that applied uniformly to Settlement Class Members, typicality is satisfied.

### D.    Rule 23(a)(4) Adequacy Is Satisfied

Plaintiff is an adequate class representative under Rule 23(a)(4). To satisfy this requirement, Plaintiff and her counsel must not have conflicts of interest with the proposed Class, and must vigorously prosecute the action on behalf of the Class. *See Hanlon*, *supra*, 150 F.3d at 1020. Here, there is no conflict of interest between Plaintiff and the proposed Settlement Class consisting of other non-union represented, non-exempt employees. Haines Decl., ¶ 27; Ball Decl., ¶¶ 2-5.

Moreover, as detailed above, the proposed settlement reflects a substantial recovery of Settlement Class Members' alleged damages. Given the relatively small amounts at issue for each individual Settlement Class Member, Plaintiff asserts it is unlikely any Settlement Class Member, especially a current employee, would have pursued these claims individually. *See Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 515 (9th Cir. 2013) ("In light of the small size of the putative class members' potential individual monetary recovery, class certification may be the only feasible means for them to adjudicate their claims. Thus, class certification is also the superior method of adjudication."). Plaintiff's counsel also have no conflicts with Settlement Class Members, and are adequate to represent the Settlement Class given their skills, qualifications, and experience. Haines Decl., ¶¶ 1-10; 27; Korobkin Decl., ¶¶ 2-7; Larsen Decl., ¶¶ 2-6; Lebe Decl., ¶¶ 1-9.

### E.     Rule 23(b)(3) Predominance Is Satisfied

Predominance tests "whether the proposed classes are sufficiently cohesive to warrant adjudication by [class action] representation." *Amchem v. Windsor*, 521 U.S. 591, 623 (1997). Because Plaintiff seeks certification for settlement purposes only, however, manageability of trial need not be considered. *Id.* at 620. As all proposed Settlement Class Members were allegedly deprived of overtime wages and minimum wages, suffered meal and rest period violations, and/or suffered the other wage and hour violations described herein due to Edison's uniform policies and practices, the proposed Settlement Class is "sufficiently cohesive" since a "common nucleus of facts" and "potential legal remedies" dominate. *See Hanlon*, *supra*, 150 F.3d at 1022.

### F.     FLSA Certification Is Also Warranted

For settlement purposes, the Parties have stipulated that the FLSA Claims should be conditionally certified. Settlement, ¶ IV.I. As noted above, Participating Class Members who deposit, cash, or otherwise negotiate their Settlement Check will thereby opt in the FLSA Claims. *Id.*, ¶¶ II.13, IV.D.3; VIII.A.2.

Judicial approval of an FLSA collective settlement is necessary to confirm the existence of contested litigation and a bona fide dispute between the parties so as to effectuate a valid and enforceable release of FLSA claims. See *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350 (11th Cir. 1982) (requiring approval of FLSA settlement). An FLSA settlement should be approved if the Court is satisfied it is the product of contested litigation, and determines it involves a fair and reasonable resolution of a bona fide dispute over FLSA coverage. *Id.* Because the factors in evaluating a proposed settlement under the FLSA and Rule 23 are the same, the analysis of the Rule 23 factors above apply equally to the settlement of the FLSA claim. *See Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468 (E.D. Cal. 2010) (approving "hybrid" FLSA/California Labor Code class action settlement).

## V.   THE PROPOSED NOTICE PROCESS SATISFIES DUE PROCESS

Due process requires that notice be provided to class members by the best reasonable method available. *See Eisen v. Carlisle & Jacqueline*, 417 U.S. 156 (1974). Notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *See Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004).

Here, Plaintiff proposes that the settlement be administered by ILYM Group, Inc., an experienced class action settlement administrator, which will mail the proposed Class Notice to the Settlement Class. *See* Declaration of Sean Hartranft and attached exhibits. The proposed Class Notice advises Class Members of the key terms of the Settlement and uniform 60-day deadline to opt-out, file a dispute, or file an objection, and also provides a summary of the alleged claims, explains the recovery formula and expected recovery amount for each member of the Settlement Class, provides contact information for Class Counsel, and notifies them of the date for the final approval hearing. *See* Haines Decl., Exhibit 1-A.

///

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

## VI.    <u>CONCLUSION</u>

Plaintiff respectfully requests that the Court grant this Motion for Preliminary Approval for the reasons discussed herein.

                                    Respectfully Submitted,

Dated:  December 15, 2021          Haines Law Group, APC

                              By:  _____
                                    Paul K. Haines, Esq.
                                    Attorneys for Plaintiff, the Class and
                                    Aggrieved Employees