**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHARON BRITT, individually, and on behalf of herself and all others similarly situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>SOUTHERN CALIFORNIA EDISON COMPANY,<br><br>     Defendant. | Case No. CV 20-8023 FMO (ASx)<br><br>**ORDER RE: MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

Having reviewed and considered all the briefing filed with respect to plaintiff Jade Ball's ("Ball" or "plaintiff") Motion for Preliminary Approval of Class Action Settlement (Dkt. 73, "Motion"), and the oral argument presented at the hearing on February 28, 2022, the court concludes as follows.

**BACKGROUND**

Sharon Britt ("Britt") filed a class and collective action complaint asserting overtime and minimum wage violations under the Fair Labor Standards Act ("FLSA") against defendant Southern California Edison Company ("defendant") on September 2, 2020. (Dkt. 1, Complaint at ¶¶ 14-25). Britt later filed a First Amended Complaint ("FAC") adding state-law wage and hour claims and an unfair competition claim, (see Dkt. 11, FAC at ¶¶ 43-104), and a Second Amended Complaint ("SAC") adding Ball, Joshua Blalock ("Blalock"), and Andre Wall ("Wall") as named plaintiffs. (See Dkt. 46, SAC at ¶ 1). Following a meet and confer in anticipation of defendant's

motion to dismiss the SAC, the parties stipulated to the filing of a Third Amended Complaint ("TAC").  (See Dkt. 56, Court's Order of July 19, 2021).

On July 30, 2021, Ball, Blalock, Britt, and Wall filed the operative TAC, asserting claims for: (1) failure to pay minimum wages under the FLSA, 29 U.S.C. §§ 206, 211 & 29 C.F.R. § 516.2(b); (2) failure to pay overtime wages under the FLSA, 29 U.S.C. §§ 207, 211 & 29 C.F.R. § 516.2(b); (3) failure to pay minimum wages under state law, Cal. Labor Code §§ 1182.12, 1194, 1194.2, 1197 & Industrial Wage Commission ("IWC") Wage Order § 3; (4) failure to pay overtime wages under state law, Cal. Labor Code §§ 510, 1194, 1198 & IWC Wage Order; (5) failure to timely pay all earned wages under state law, Cal. Labor Code §§ 204, 210 & IWC Wage Order; (6) failure to provide meal periods under state law, Cal. Labor Code §§ 226.7, 512 & IWC Wage Order; (7) failure to permit rest breaks under state law, Cal. Labor Code § 226.7 & IWC Wage Order; (8) failure to provide accurate itemized wage statements under state law, Cal. Labor Code § 226 & IWC Wage Order; (9) failure to pay all wages due upon separation of employment and within the required time under state law, Cal. Labor Code §§ 201, 202 and 203; (10) failure to reimburse all business expenses under state law, Cal. Labor Code §§ 2800, 2802; (11) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq.; and (12) PAGA civil penalties.  (See Dkt. 57, TAC at ¶¶ 29-111).

Pursuant to the court's Scheduling and Case Management Order ("CMO"), (see Dkt. 23, CMO at 17), the parties held a private mediation on August 11, 2021, and agreed to consider the mediator's proposal for settlement.  (Dkt. 73, Motion at 4); (see also Dkt. 61, Notice of Settlement at 3).  Meanwhile, defendants filed a motion to dismiss the TAC on August 20, 2021.  (See Dkt. 58, Motion to Dismiss).

On August 25, 2021, the parties agreed to the mediator's proposal and filed their Notice of Settlement.  (See Dkt. 61, Notice of Settlement).  Because union members Blalock, Britt, and Wall concluded that a collective bargaining agreement would likely bar them from settling claims on behalf of union employees, they agreed to resolve their claims on an individual basis, and dismiss the class claims of the union employees without prejudice.  (See Dkt. 61, Notice of Settlement at 3); (Dkt. 77, Court's Order of January 24, 2022, at 2).  The parties memorialized the terms of the

settlement in December 2021, (Dkt. 73-1, Declaration of Paul K. Haines [] ("Haines Decl."), Exh. 1, Settlement Agreement), and filed an amended settlement agreement in March 2022 after a hearing on the Motion. (See Dkt. 80-1, Declaration of Neil M. Larsen [] ("Larsen Decl."), Exh. 3, "Amended Settlement Agreement"); (see also Dkt. 80, Supplemental Brief in Support of Motion for Preliminary Approval [] ("Supp. Br.") at 1).

The parties have defined the settlement class as "any current or former non-union represented, nonexempt employee of Defendant who worked for Defendant in California during the Class Period." (Dkt. 80-1, Larsen Decl., Exh. 3, Amended Settlement Agreement at § II.2.). Pursuant to the settlement, defendant will pay a non-reversionary gross settlement amount of $3,222,500.00, (see id. at § IV.C.); (Dkt. 73, Motion at 16), which will be used to pay class members, participating FLSA collective members, PAGA recipients, the class representative's service payment, settlement administration costs, the PAGA payment to the California Labor & Workforce Development Agency ("the LWDA"), and attorney's fees and costs. (See Dkt. 80-1, Larsen Decl., Exh. 3, Amended Settlement Agreement at § IV.C.). The settlement provides for up to $805,625 (approximately 25% of the gross settlement amount) in attorney's fees, (id. at § IV.E.); up to $45,000 in costs, (id.); a $7,500 service payment for Ball, (id. at § IV.F.); and a $75,000 payment to the LWDA. (Id. at § IV.D) Also, the proposed settlement administrator, ILYM Group, Inc. ("ILYM"), shall be paid no more than $50,000 from the gross settlement amount. (Id. at §§ IV.G. & V.A.). The resulting net settlement amount is expected to be at least $2,239,375, which includes $200,000 for FLSA opt-in members and $100,000 for the PAGA settlement amount, including $25,000 as the 25% PAGA employee allocation. (Id. at §§ II.23 & IV.D.). The remainder of the net settlement amount will be paid on a pro rata basis to all participating class members. (Id. at § IV.D.); (see Dkt. 73, Motion at 17) ("By taking into account the proportional number of workweeks and pay periods worked by Class Members, the Settlement formula compensates Class Members based on the extent of their potential injuries and their potential damages as alleged in the Complaint[.]").

In her Motion, plaintiff seeks an order: (1) preliminarily approving the proposed settlement; (2) certifying the proposed settlement class; (3) appointing Ball as class representative; (4)

1    appointing Jonathan M. Lebe and Annaliz Loera of Lebe Law, APC ("Lebe Law"), and Paul K.

2    Haines, Tuvia Korobkin, and Neil M. Larsen of Haines Law Group, APC ("Haines Law") as class

3    counsel; (5) appointing ILYM as settlement administrator;   (6) approving and ordering

4    dissemination of the proposed class notice and forms; and (7) scheduling a final approval hearing.

5    (See Dkt. 73, Notice of Motion at 1-2).

6                                          **LEGAL STANDARDS**

7    I.      CLASS CERTIFICATION.

8           At the preliminary approval stage, the court "may make either a preliminary determination

9    that the proposed class action satisfies the criteria set out in Rule 23 . . . or render a final decision

10   as to the appropriateness of class certification."[1] Smith v. Wm. Wrigley Jr. Co., 2010 WL 2401149,

11   *3 (S.D. Fla. 2010) (citation and footnote omitted); see also Sandoval v. Roadlink USA Pac., Inc.,

12   2011 WL 5443777, *2 (C.D. Cal. 2011) (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620,

13   117 S.Ct. 2231, 2248 (1997) ("Amchem")) ("Parties seeking class certification for settlement

14   purposes must satisfy the requirements of Federal Rule of Civil Procedure 23[.]").   In the

15   settlement context, a court must pay "undiluted, even heightened, attention" to the class

16   certification requirements. Amchem, 521 U.S. at 620, 117 S.Ct. at 2248; In re Volkswagen "Clean

17   Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig., 895 F.3d 597, 606 (9th Cir. 2018) (same). "Such

18   attention is of vital importance, for a court asked to certify a settlement class will lack the

19   opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as

20   they unfold." Amchem, 521 U.S. at 620, 117 S.Ct. at 2248.

21          A party seeking class certification must first demonstrate that: "(1) the class is so numerous

22   that joinder of all members is impracticable; (2) there are questions of law or fact common to the

23   class; (3) the claims or defenses of the representative parties are typical of the claims or defenses

24   of the class; and (4) the representative parties will fairly and adequately protect the interests of the

25   class." Fed. R. Civ. P. 23(a).  Courts refer to these requirements by the following shorthand:

26   "numerosity, commonality, typicality and adequacy of representation[.]"  Mazza v. Am. Honda

27   _____

28          [1] All "Rule" references are to the Federal Rules of Civil Procedure.

Motor Co., 666 F.3d 581, 588 (9th Cir. 2012), overruled on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC, 31 F.4th 651 (9th Cir. 2022) (en banc) ("Olean Wholesale").  In addition to fulfilling the four prongs of Rule 23(a), the proposed class must meet at least one of the three requirements listed in Rule 23(b).[2]  See Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 345, 131 S.Ct. 2541, 2548 (2011) ("Dukes").

"Before it can certify a class, a district court must be satisfied, after a rigorous analysis, that the prerequisites of both Rule 23(a) and" the applicable Rule 23(b) provision have been satisfied. Olean Wholesale, 31 F.4th at 664 (internal quotation marks omitted).  A plaintiff "must prove the facts necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence."  Id. at 665.  However, Rule 23(b)(3) issues regarding manageability are "not a concern in certifying a settlement class where, by definition, there will be

---

[2]  Rule 23(b) is satisfied if:

(1) prosecuting separate actions by or against individual class members would create a risk of:
>(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The matters pertinent to these findings include:
>(A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(1)-(3).

1  no trial." In re Hyundai and Kia Fuel Econ. Litig., 926 F.3d 539, 556-57 (9th Cir. 2019) (en banc)

2  ("In re Hyundai").

3  II.    FAIRNESS OF CLASS ACTION SETTLEMENT.

4         Rule 23 provides that "[t]he claims, issues, or defenses of a certified class – or a class

5  proposed to be certified for purposes of settlement – may be settled . . . only with the court's

6  approval."  Fed. R. Civ. P. 23(e).  "The primary concern of [Rule 23(e)] is the protection of th[e]

7  class members, including the named plaintiffs, whose rights may not have been given due regard

8  by the negotiating parties." Officers for Just. v. Civ. Serv. Comm'n of the City & Cty. of S.F., 688

9  F.2d 615, 624 (9th Cir. 1982).  Whether to approve a class action settlement is "committed to the

10 sound discretion of the trial judge." Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th

11 Cir. 1992) (internal quotation marks omitted).

12        Approval of a class action settlement requires a two-step process – preliminary approval

13 and the dissemination of notice to the class, followed by a later final approval.  See Spann v. J.C.

14 Penney Corp., 314 F.R.D. 312, 319 (C.D. Cal. 2016).  Although "[c]loser scrutiny is reserved for

15 the final approval hearing[,]" Harris v. Vector Mktg. Corp., 2011 WL 1627973, *7 (N.D. Cal. 2011),

16 "the showing at the preliminary approval stage – given the amount of time, money, and resources

17 involved in, for example, sending out . . . class notice[] – should be good enough for final

18 approval." Spann, 314 F.R.D. at 319; see also 4 Newberg on Class Actions § 13:10 (5th ed.)

19 (Supp. 2021) ("[S]ending notice to the class costs money and triggers the need for class members

20 to consider the settlement, actions which are wasteful if the proposed settlement [is] obviously

21 deficient from the outset.").  The court may grant preliminary approval and direct notice in a

22 reasonable manner to all class members who would be bound by the settlement if the parties

23 provide sufficient information to the court to show that the court will likely be able to: (1) "approve

24 the proposal under Rule 23(e)(2)"; and (2) "certify the class for purposes of judgment on the

25 [settlement] proposal." Fed. R. Civ. P. 23(e)(1)(B); see Macy v. GC Servs. Ltd. P'ship, 2019 WL

26 6684522, *1 (W.D. Ky. 2019) ("The standard for preliminary approval was codified in 2018, with

27 Rule 23 now providing for notice to the class upon the parties showing that the court will likely be

28 able to approve the proposed settlement under the final-approval standard contained in Rule

23(e)(2)."); 4 <u>Newberg on Class Actions</u> § 13:10 (5th ed.) ("In 2018, Congress codified this approach into Rule 23.  Rule 23(e)(1)(B) now sets forth the grounds for the initial decision to send notice of a proposed settlement to the class[.]").

"At this stage, the court may grant preliminary approval of a settlement and direct notice to the class if the settlement:  (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval." <u>Spann</u>, 314 F.R.D. at 319 (internal quotation marks omitted); <u>see</u> <u>Bronson v. Samsung Elecs. Am., Inc.</u>, 2019 WL 5684526, *7 (N.D. Cal. 2019) ("Preliminary approval is appropriate if the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.") (internal quotation marks omitted); <u>see also</u> 2018 Adv. Comm. Notes to Amendments to Rule 23(e)(1) (The types of information that should be provided to the court in deciding whether to send notice – <u>i.e.</u>, that it will likely approve the settlement under Rule 23(e)(2) and certify the class for purposes of settlement – "depend on the specifics of the particular class action and proposed settlement." "[G]eneral observations" as to the types of information that should be provided include, but are not limited to, the following:  (1) "the extent and type of benefits that the settlement will confer on the members of the class" and if "funds are . . . left unclaimed, the settlement agreement ordinarily should address the distribution of those funds"; (2) "information about the likely range of litigated outcomes, and about the risks that might attend full litigation"; (3) "[i]nformation about the extent of discovery completed in the litigation or in parallel actions"; (4) "information about the existence of other pending or anticipated litigation on behalf of class members involving claims that would be released under the proposal"; (5) "the proposed handling of an award of attorney's fees under Rule 23(h)"; (6) "any agreement that must be identified under Rule 23(e)(3)"; and (7) "any other topic that [the parties] regard as pertinent to the determination whether the proposal is fair, reasonable, and adequate.").

1                                 **DISCUSSION**

2   I.     CLASS CERTIFICATION.

3       A.     Rule 23(a) Requirements.

4           1.    **Numerosity**.

5          A putative class may be certified only if it "is so numerous that joinder of all members is

6 impracticable[.]"  Fed. R. Civ. P. 23(a)(1).  "Although the size of the class is not the sole

7 determining factor, . . . where a class is large in numbers, joinder will usually be impracticable."

8 A.B. v. Hawaii State Dep't of Educ., 30 F.4th 828, 835 (9th Cir. 2022) (internal quotation marks

9 omitted); see Jordan v. Cty. of Los Angeles, 669 F.2d 1311, 1319 (9th Cir.), vacated on other

10 grounds by Cty. of Los Angeles v. Jordan, 459 U.S. 810, 103 S.Ct. 35 (1982) (class sizes of 39,

11 64, and 71 are sufficient to satisfy the numerosity requirement).  "As a general matter, courts have

12 found that numerosity is satisfied when class size exceeds 40 members[.]"  Slaven v. BP Am.,

13 Inc., 190 F.R.D. 649, 654 (C.D. Cal. 2000); see Tait v. BSH Home Appliances Corp., 289 F.R.D.

14 466, 473-74 (C.D. Cal. 2012) (same).

15          Here, the class is so numerous that joinder is impracticable.  The settlement class includes

16 approximately 5,063 members, (see Dkt. 73, Motion at 19), which easily exceeds the minimum

17 threshold for numerosity.

18          2.    **Commonality**.

19          The commonality requirement is satisfied if "there are questions of law or fact common to

20 the class[.]"  Fed. R. Civ. P. 23(a)(2).  Proof of commonality under Rule 23(a) is "less rigorous"

21 than the related preponderance standard under Rule 23(b)(3).  See Hanlon v. Chrysler Corp., 150

22 F.3d 1011, 1019 (9th Cir. 1998), overruled on other grounds as recognized by Castillo v. Bank of

23 Am., NA, 980 F.3d 723 (9th Cir. 2020); Mazza, 666 F.3d at 589.  Commonality requires plaintiffs

24 to demonstrate that their claims "depend upon a common contention . . . [whose] truth or falsity

25 will resolve an issue that is central to the validity of each one of the claims in one stroke."  Dukes,

26 564 U.S. at 350, 131 S.Ct. at 2551; see Wolin v. Jaguar Land Rover N. Am., LLC, 617 F.3d 1168,

27 1172 (9th Cir. 2010) (The commonality requirement demands that "class members' situations

28 share a common issue of law or fact, and are sufficiently parallel to insure a vigorous and full

presentation of all claims for relief.") (internal quotation marks omitted).   "The plaintiff must demonstrate the capacity of classwide proceedings to generate common answers to common questions of law or fact that are apt to drive the resolution of the litigation." Mazza, 666 F.3d at 588 (internal quotation marks omitted).  "This does not, however, mean that every question of law or fact must be common to the class; all that Rule 23(a)(2) requires is a single significant question of law or fact." Abdullah v.  U.S. Sec. Assocs., Inc., 731 F.3d 952, 957 (9th Cir. 2013) (emphasis and internal quotation marks omitted); see Mazza, 666 F.3d at 589 (characterizing commonality as a "limited burden[,]" stating that it "only requires a single significant question of law or fact").  "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Hanlon, 150 F.3d at 1019.

This case involves common class-wide questions that are apt to drive the resolution of the litigation.  The main issues in this action involve the legality of defendant's wage and hour policies and practices, including its pay plan, meal policies, and expense reimbursement plan, as well as the validity of defendant's wage statements.  (See Dkt. 73, Motion at 19); (Dkt. 57, TAC at ¶¶ 4-11, 27).  Under the circumstances, the court finds that Ball has satisfied the commonality requirement. See, e.g., McConville v. Renzenberger, Inc., 2019 WL 9408103, *5 (C.D. Cal. 2019) ("This case involves common class-wide issues that are apt to drive the resolution of plaintiff's claims. There are significant common questions as to whether [defendant]'s meal-and-rest-period policies were legally valid; whether [defendant] failed to pay all straight and overtime wages owed to class members; and whether [defendant] failed to provide accurate, itemized wage statements."); Taylor v. FedEx Freight, Inc., 2016 WL 1588405, *3 (E.D. Cal. 2016) ("Whether [defendant's] mileage pay plan fail[ed] to separately compensate for all time worked including non-driving activities, and whether such failure [was] unlawful under the Labor Code and IWC Wage Order . . . are common questions of law and facts to the proposed settlement class. These common questions of law or fact shared by all the proposed settlement class members are sufficient to satisfy the commonality requirement."); Clesceri v. Beach City Investigations & Protective Servs., Inc., 2011 WL 320998, *5 (C.D. Cal. 2011) (finding commonality requirement met for preliminary approval because "the

settlement class members did not receive proper rest breaks; [] the settlement class members did not receive proper meal breaks; [and] the settlement class members did not receive adequate wage statements in compliance" with the Labor Code).

### 3. **Typicality**.

"Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." Ellis v. Costco Wholesale Corp., 657 F.3d 970, 984 (9th Cir. 2011) (internal quotation marks omitted). To demonstrate typicality, plaintiff's claims must be "reasonably co-extensive with those of absent class members[,]" although "they need not be substantially identical." Hanlon, 150 F.3d at 1020; see Ellis, 657 F.3d at 984 ("Plaintiffs must show that the named parties' claims are typical of the class."). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Ellis, 657 F.3d at 984 (internal quotation marks omitted).

Here, Ball, like the putative class members, was a non-union, non-exempt employee during the relevant time period, and was paid pursuant to the same policies and procedures at issue in this case. (See Dkt. 73, Motion at 19); (Dkt. 73-5, Declaration of Jade Ball ("Ball Decl.") at ¶¶ 2-3). Thus, Ball's claims and the claims of the class arise from the same factual basis and are based on the same legal theories, i.e., that defendant violated their rights under California and federal law by, for instance, failing to: pay all wages owed for all hours worked; pay proper overtime wages; provide all legally-required meal and rest periods; furnish accurate wage statements; and reimburse for all work-related expenses. (See Dkt. 57, TAC at ¶¶ 29-111). Finally, defendant has not raised any facts that would subject Ball "to unique defenses which threaten to become the focus of the litigation." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks omitted). In short, Ball has satisfied the typicality requirement.

### 4. **Adequacy of Representation**.

"The named Plaintiffs must fairly and adequately protect the interests of the class." Ellis, 657 F.3d at 985 (citing Fed. R. Civ. P. 23(a)(4)). "To determine whether [the] named plaintiffs will

1   adequately represent a class, courts must resolve two questions:  (1) do the named plaintiffs and

2   their counsel have any conflicts of interest with other class members and (2) will the named

3   plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  Id. (internal

4   quotation marks omitted).  "Adequate representation depends on, among other factors, an

5   absence of antagonism between representatives and absentees, and a sharing of interest

6   between representatives and absentees."  Id.

7         Here, the proposed class representative has no individual claims separate from the class

8   claims, (see, generally, Dkt. 57, TAC), and does not appear to have any conflicts of interest with

9   the absent class members. (See Dkt. 73, Motion at 19); (Dkt. 73-1, Haines Decl. at ¶ 27); see,

10   e.g., Barbosa v. Cargill Meat Sols. Corp, 297 F.R.D. 431, 442 (E.D. Cal. 2013) ("[T]here is no

11   apparent conflict of interest between the named Plaintiffs' claims and those of the other Class

12   Members' – particularly because the named Plaintiffs have no separate and individual claims apart

13   from the Class.").  Thus, "[t]he adequacy-of-representation requirement is met here because

14   Plaintiff[] ha[s] the same interests as the absent Class Members[.]"  Barbosa, 297 F.R.D. at 442.

15         Finally, as noted earlier, adequacy "also factors in competency and conflicts of class

16   counsel."  Amchem, 521 U.S. at 626 n. 20, 117 S.Ct. at 2251.  Here, the Amended Settlement

17   Agreement provides that the court appoint Lebe Law and Haines Law as class counsel. (See Dkt.

18   80-1, Larsen Decl., Exh. 3, Amended Settlement Agreement at §§ II.5. & IX.E.).  Having reviewed

19   the declarations of proposed class counsel, (see Dkt. 73-1, Haines Decl. at ¶¶ 1-10); (Dkt. 73-2,

20   Declaration of Jonathan M. Lebe [] at ¶¶ 3-9); (Dkt. 73-3, Declaration of Tuvia Korobkin [] at ¶¶

21   1-7); (Dkt. 73-4, Declaration of Neil M. Larsen [] at ¶¶ 1-6), the court finds that counsel are

22   competent, and there are no issues as to the adequacy of representation.  See Barbosa, 297

23   F.R.D. at 443 ("There is no challenge to the competency of the Class Counsel, and the Court finds

24   that Plaintiffs are represented by experienced and competent counsel who have litigated

25   numerous class action cases.").

26         B.    Rule 23(b) Requirements.

27         Certification under Rule 23(b)(3) is proper "whenever the actual interests of the parties can

28   be served best by settling their differences in a single action."  Hanlon, 150 F.3d at 1022 (internal

quotation marks omitted).  The rule requires two different inquiries, specifically a determination as to whether:  (1) "questions of law or fact common to class members predominate over any questions affecting only individual members[;]" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3); see Spann, 314 F.R.D. at 321-22.

> ### 1.   **Predominance**.

"[T]he general rule [is] that predominance is easier to satisfy in the settlement context." Jabbari v. Farmer, 965 F.3d 1001, 1006 (9th Cir. 2020).  "To determine whether a class satisfies the [predominance] requirement, a court pragmatically compares the quality and import of common questions to that of individual questions."  Id. at 1005.  "[T]he predominance analysis under Rule 23(b)(3) focuses on the relationship between the common and individual issues in the case, and tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation."  Abdullah, 731 F.3d at 964 (internal quotation marks omitted); see Amchem, 521 U.S. at 623, 117 S.Ct. at 2249 ("The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.").  "If a common question will drive the resolution [of the litigation], even if there are important questions affecting only individual members, then the class is sufficiently cohesive to warrant adjudication by representation."  Jabbari, 965 F.3d at 1005 (internal quotation marks omitted); see Abdullah, 731 F.3d at 964 ("Rule 23(b)(3) requires [only] a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class.") (internal quotation marks omitted) (brackets in original).  Finally, the class damages must be sufficiently traceable to plaintiffs' liability case.  See Comcast Corp. v. Behrend, 569 U.S. 27, 35, 133 S.Ct. 1426, 1433 (2013).

For the reasons discussed above, see supra at § I.A.2., the court is persuaded that common questions predominate over individual questions. See Tyson Foods, Inc. v. Bouaphakeo, 577 U.S. 442, 453, 136 S.Ct. 1036, 1045 (2016) ("When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately,

1   such as damages or some affirmative defenses peculiar to some individual class members.")

2   (internal quotation marks omitted); <u>Senne v. Kansas City Royals Baseball Corp.</u>, 934 F.3d 918,

3   938 (9th Cir. 2019) ("[P]redominance in employment cases is rarely defeated on the grounds of

4   differences among employees so long as liability arises from a common practice or policy of an

5   employer.") (internal quotation marks omitted).   Finally, the relief sought applies to all class

6   members and is traceable to plaintiff's liability case.   <u>See</u> <u>Comcast</u>, 569 U.S. at 35, 133 S.Ct. at

7   1433.   In short, the court is persuaded that "[a] common nucleus of facts and potential legal

8   remedies dominates this litigation."   <u>Hanlon</u>, 150 F.3d at 1022.

9              2.   **Superiority**.

10   "The superiority inquiry under Rule 23(b)(3) requires determination of whether the

11   objectives of the particular class action procedure will be achieved in the particular case" and

12   "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution."

13   <u>Hanlon</u>, 150 F.3d at 1023.   Rule 23(b)(3) provides a list of four non-exhaustive factors relevant to

14   superiority.   <u>See</u> Fed. R. Civ. P. 23(b)(3)(A)-(D).

15   The first factor considers "the class members' interests in individually controlling the

16   prosecution or defense of separate actions."   Fed. R. Civ. P. 23(b)(3)(A).   "This factor weighs

17   against class certification where each class member has suffered sizeable damages or has an

18   emotional stake in the litigation."   <u>Barbosa</u>, 297 F.R.D. at 444.   Here, Ball does not assert claims

19   for emotional distress, nor is there any indication that the amount of damages any individual class

20   member could recover is significant or substantially greater than the potential recovery of any

21   other class member.   (<u>See</u> Dkt. 73, Motion at 20) ("Given the relatively small amounts at issue for

22   each individual Settlement Class Member, Plaintiff asserts it is unlikely any Settlement Class

23   Member, especially a current employee, would have pursued these claims individually.").   The

24   alternative method of resolution – pursuing individual claims for a relatively modest amount of

25   damages – would likely never be brought, as "litigation costs would dwarf potential recovery."

26   <u>Hanlon</u>, 150 F.3d at 1023; <u>see</u> <u>Leyva v. Medline Indus., Inc.</u>, 716 F.3d 510, 515 (9th Cir. 2013)

27   ("In light of the small size of the putative class members' potential individual monetary recovery,

28   class certification may be the only feasible means for them to adjudicate their claims.   Thus, class

1    certification is also the superior method of adjudication."); Bruno v. Quten Research Inst., LLC,

2    280 F.R.D. 524, 537 (C.D. Cal. 2011) ("Given the small size of each class member's claim, class

3    treatment is not merely the superior, but the only manner in which to ensure fair and efficient

4    adjudication of the present action.").  In short, "there is no evidence that Class members have any

5    interest in controlling prosecution of their claims separately nor would they likely have the

6    resources to do so."  Munoz v. PHH Corp., 2013 WL 2146925, *26 (E.D. Cal. 2013).

7        The second factor is "the extent and nature of any litigation concerning the controversy

8    already begun by or against class members[.]"  Fed. R. Civ. P. 23(b)(3)(B).  While any class

9    member who wishes to control his or her own case may opt out of the class, see Fed. R. Civ. P.

10   23(c)(2)(B)(v), "other pending litigation is evidence that individuals have an interest in controlling

11   their own litigation[.]"  2 Newberg on Class Actions § 4:70 (5th ed.) (emphasis omitted).  Here,

12   there is no indication that any class member is involved in any other litigation concerning the

13   claims in this case.  (See, generally, Dkt. 73, Motion); see Barbosa, 297 F.R.D. at 444 ("The Court

14   does not have any information that litigation concerning this controversy is currently being pursued

15   by or against the class members; thus, this factor is neutral.").

16       The third factor is "the desirability or undesirability of concentrating the litigation of the

17   claims in the particular forum[,]" and the fourth factor is "the likely difficulties in managing a class

18   action."  Fed. R. Civ. P. 23(b)(3)(C)-(D).  As noted above, "[i]n the context of settlement . . . the

19   third and fourth factors are rendered moot and are irrelevant."  Barbosa, 297 F.R.D. at 444;  see

20   Amchem, 521 U.S. at 620, 117 S.Ct. at 2248 ("Confronted with a request for settlement-only class

21   certification, a district court need not inquire whether the case, if tried, would present intractable

22   management problems, . . . for the proposal is that there be no trial.") (citation omitted); In re

23   Hyundai, 926 F.3d at 556-57 ("The criteria for class certification are applied differently in litigation

24   classes and settlement classes.  In deciding whether to certify a litigation class, a district court

25   must be concerned with manageability at trial.  However, such manageability is not a concern in

26   certifying a settlement class where, by definition, there will be no trial.").

27       The only factors in play here weigh in favor of class treatment.  Further, the filing of

28   separate suits by potentially thousands of other class members "would create an unnecessary

1  burden on judicial resources."  Barbosa, 297 F.R.D. at 445.  Under the circumstances, the court

2  finds that the superiority requirement is satisfied.[3]

3  II.    FAIRNESS, REASONABLENESS, AND ADEQUACY OF THE PROPOSED

4        SETTLEMENT.

5        A.    The Settlement is the Product of Arm's-Length Negotiations.

6        Pursuant to Rule 23(e)(2)(B), the court must evaluate whether the settlement was

7  negotiated at arm's length.  Here, plaintiff's counsel diligently investigated the case, and the

8  parties engaged in extensive formal and informal discovery, including Rule 30(b)(6) depositions.

9  (Dkt. 73, Motion at 3-4, 6, 14); (Dkt. 73-1, Haines Decl. at ¶ 11); (Dkt. 73-2, Lebe Decl., ¶ 17).

10  Prior to the mediation, which was conducted by an experienced wage and hour class action

11  mediator, (see Dkt. 73-1, Haines Decl. at ¶ 13); (Dkt. 73-2, Lebe Decl., ¶ 19), defendant "provided

12  detailed data regarding Settlement Class Members' compensation, hours worked, and other

13  relevant payroll data, and Plaintiff extensively analyzed the data to come up with various exposure

14  models." (Dkt. 73, Motion at 14).  Plaintiff's counsel also retained experts to analyze the data and

15  calculate potential class-wide exposure for plaintiff's claims and defendant's defenses. (Dkt. 73-1,

16  Haines Decl. at ¶ 11); (Dkt. 73-2, Lebe Decl., ¶¶ 17-18).

17        Based on the evidence and record before the court, the court is persuaded that the parties

18  thoroughly investigated and considered their own and the opposing parties' positions.  The parties

19  had a sound basis for measuring the terms of the settlement against the risks of continued

20  litigation, and there is no evidence that the settlement is "the product of fraud or overreaching by,

21  or collusion between, the negotiating parties[.]"  Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 965

22  (9th Cir. 2009) (internal quotation marks omitted).

23

24

25

26  _____

27        [3]  The court also finds that the FLSA collective action should be preliminarily certified.  See,
     e.g., Campbell v. City of Los Angeles, 903 F.3d 1090, 1112-13 (9th Cir. 2018) (noting that the
28  FLSA "imposes a lower bar than Rule 23").

1     **B.**     The Amount Offered in Settlement Falls Within a Range of Possible Judicial

2              Approval and is a Fair and Reasonable Outcome for Class Members.

3              1.     **Recovery for Class Members.**

4        As noted above, class members will share in a non-reversionary gross settlement amount

5   of $3,222,500.[4]  (See Dkt. 80-1, Larsen Decl., Exh. 3, Amended Settlement Agreement at § IV.C.);

6   (Dkt. 73, Motion at 16).  According to plaintiff, defendant's realistic exposure in this case was

7   approximately $4,192,951, (See Dkt. 73, Motion at 13); (Dkt. 73-1, Haines Decl. at ¶ 24), which

8   reflects the risk-adjusted damages plaintiff reasonably expected to recover in light of defendant's

9   defenses.  (See Dkt. 73, Motion at 6-13) (explaining the estimated damages for each claim); (Dkt.

10  73-1, Haines Decl. at ¶¶ 16-24) (same); (see also Dkt. 74, Defendant['s ] Statement in Support of

11  Plaintiff's Motion [] at 2-6) (explaining defenses for each claim).  For example, plaintiff's "projected

12  realistic exposure" for meal period violations reflects the "extremely low rate of non-compliant first

13  meal periods," which plaintiff determined would make certification of her first meal claim unlikely.

14  (Dkt. 73, Motion at 7-8).  Plaintiff also determined that she was unlikely to certify or prevail on her

15  second meal claim because the shifts occurred on federal enclaves, and thus defendant had a

16  strong argument that the claim "was nearly completely preempted by the federal enclave doctrine."

17  (Id. at 7).  If the requested attorney's fees and costs, LWDA payment, settlement administration

18  costs, and service award are approved, plaintiff expects that the average payment to class

19  members to be $442.30.  (See id. at 16); (Dkt. 73-1, Haines Decl. at ¶ 15).

20        Under the circumstances, the court is persuaded that the settlement is fair, reasonable, and

21  adequate, particularly when viewed in light of the litigation risks in this case and the costs, risks,

22  and delay of trial and appeal.  See Fed. R. Civ. P. 23(e)(1)(B)(i) & (e)(2)(C)(i); 2018 Adv. Comm.

23  Notes to Amendments to Rule 23(e)(1) (The types of information that should be provided to the

24  court deciding whether to grant preliminary approval includes, among other things: (1) "the extent

25  and type of benefits that the settlement will confer on the members of the class"; and (2)

26  "information about the likely range of litigated outcomes, and about the risks that might attend full

27  _____

28        [4]  The FLSA members and the PAGA recipients will also share in this amount.

litigation"). In other words, the risks of continued litigation are significant. Weighed against those risks, and coupled with the delays associated with continued litigation, the court is persuaded that the benefits to the class fall within the range of reasonableness. See, e.g., In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000) (ruling that "the Settlement amount of almost $2 million was roughly one-sixth of the potential recovery, which, given the difficulties in proving the case, [wa]s fair and adequate"); In re Uber, 2017 WL 2806698, *7 (N.D. Cal. 2017) (granting preliminary approval of settlement that was worth 7.5% or less of the expected value); see also Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998) ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.") (internal quotation marks omitted). Finally, the settlement promotes enforcement of wage and hour laws in that it provides for recovery for the PAGA claim. (See 80-1, Larsen Decl., Exh. 3, Amended Settlement Agreement at § IV.D.).

        2.   **Release of Claims**.

The court must also consider whether the settlement contains an overly broad release of liability. See 4 Newberg on Class Actions § 13:15 (5th ed.) ("Beyond the value of the settlement, courts [have] rejected preliminary approval when the proposed settlement contain[s] obvious substantive defects such as . . . overly broad releases of liability."); see, e.g., Fraser v. Asus Comput. Int'l, 2012 WL 6680142, *3 (N.D. Cal. 2012) (denying preliminary approval of proposed settlement that provided defendant a "nationwide blanket release" in exchange for payment "only on a claims-made basis[,]" without the establishment of a settlement fund or any other benefit to the class). Here, class members who do not exclude themselves from the settlement will release

> all claims, charges, complaints, liens, demands, causes of action, obligations, damages and liabilities alleged in the Complaint, or which could have been alleged based on the factual allegations in the Complaint, including claims for: failure to pay wages for all time worked, unpaid wages, liquidated damages, interest, minimum wages, overtime, miscalculated wages and overtime, improper deduction(s), late payment of wages, meal and rest

period premium pay, incremental time pay, sick pay, vacation pay, meal and rest periods, failure to reimburse expenses incurred, failure to keep accurate and complete payroll records.[5]

(Dkt. 80-1, Larsen Decl., Exh. 3, Amended Settlement Agreement at § II.3.); (see also id. at §§ IV.B.2., VIII.A.1.).  In addition, FLSA opt-in plaintiffs will release

all claims, charges, complaints, liens, demands, causes of action, obligations, damages and liabilities arising under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., that were pled in the Complaint, including, claims for unpaid wages, timely payment of wages, failure to pay minimum wages, unpaid overtime, or which could have been asserted under the FLSA, based upon the facts alleged in the Complaint against the Released Parties, arising during the FLSA Settlement Period.

(Id. at § II.16.); (see also id. at §§ IV.B.1., VIII.A.2.).

Under the circumstances, the court finds that the release adequately balances fairness to plaintiff and the absent class members with defendant's business interest in ending this litigation. See, e.g., Fraser, 2012 WL 6680142, at *4 (recognizing defendant's "legitimate business interest in 'buying peace' and moving on to its next challenge" as well as the need to prioritize "[f]airness to absent class member[s]").

C.   The Settlement Agreement Does Not Improperly Grant Preferential Treatment to the Class Representative.

Pursuant to Rule 23(e)(2)(D), the court must evaluate whether the settlement "treats class members equitably relative to each other."  One of the areas the court must scrutinize carefully is "[i]ncentive awards [which] are payments to class representatives for their service to the class in bringing the lawsuit." Radcliffe v. Experian Info. Sols. Inc., 715 F.3d 1157, 1163 (9th Cir. 2013). The Ninth Circuit has instructed "district courts to scrutinize carefully the awards so that they do

_____

[5]  The release for the class representative is broader and includes a waiver of rights under Cal. Civ. Code § 1542. (See Dkt. 80-1, Larsen Decl., Exh. 3, Amended Settlement Agreement at § II.22.); (Dkt. 73-5, Ball Decl. ¶ 6).

1    not undermine the adequacy of the class representatives." Id.  The court must examine whether

2    there is a "significant disparity between the incentive awards and the payments to the rest of the

3    class members" such that it creates a conflict of interest.  See id. at 1165.  "In deciding whether

4    [an incentive] award is warranted, relevant factors include the actions the plaintiff has taken to

5    protect the interests of the class, the degree to which the class has benefitted from those actions,

6    and the amount of time and effort the plaintiff expended in pursuing the litigation."  Cook v. Niedert,

7    142 F.3d 1004, 1016 (7th Cir. 1998).

8           Here, the Amended Settlement Agreement provides that class counsel may request a

9    service payment for Ball of no more than $7,500.  (See Dkt. 80-1, Larsen Decl., Exh. 3, Amended

10   Settlement Agreement at § II.20.).  Although plaintiff appears to have been diligent in litigating the

11   case, (see Dkt. 73-5, Ball Decl. ¶ 5), the court believes that a $7,500 service payment is

12   excessive.  Under the circumstances, the court tentatively finds that an incentive payment of no

13   more than $5,000 is appropriate.  See Dyer v. Wells Fargo Bank, N.A., 303 F.R.D. 326, 335 (N.D.

14   Cal. 2014) (finding an incentive award of $5,000 presumptively reasonable).

15          D.     Class Notice and Notification Procedures.

16          Upon settlement of a certified class, "[t]he court must direct notice in a reasonable manner

17   to all class members who would be bound by the proposal[.]"  Fed. R. Civ. P. 23(e)(1)(B).  Rule

18   23(c)(2) requires the "best notice that is practicable under the circumstances, including individual

19   notice" of particular information.  See Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice requirements

20   for classes certified under Rule 23(b)(3)).

21          "The standard for the adequacy of a settlement notice in a class action under either the Due

22   Process Clause or the Federal Rules is measured by reasonableness."  Wal-Mart Stores, Inc. v.

23   Visa U.S.A., Inc., 396 F.3d 96, 113 (2d Cir. 2005); Low v. Trump Univ., LLC, 881 F.3d 1111, 1117

24   (9th Cir. 2018) ("The yardstick against which we measure the sufficiency of notices in class action

25   proceedings is one of reasonableness.") (internal quotation marks omitted).  A class action

26   settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient

27   detail to alert those with adverse viewpoints to investigate and to come forward and be heard."

28   Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004) (internal quotation marks

omitted); see <u>Gooch v. Life Invs. Ins. Co. of Am.</u>, 672 F.3d 402, 423 (6th Cir. 2012) (Settlement notices "are sufficient if they inform the class members of the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, [and] that any class member may appear and be heard at the hearing[.]") (internal quotation marks omitted). The notice should provide sufficient information to allow class members to decide whether they should accept the benefits of the settlement, opt out and pursue their own remedies, or object to the terms of the settlement but remain in the class. See <u>In re Integra Realty Res., Inc.</u>, 262 F.3d 1089, 1111 (10th Cir. 2001) ("The standard for the settlement notice under Rule 23(e) is that it must 'fairly apprise' the class members of the terms of the proposed settlement and of their options.") (internal quotation marks omitted).

Here, class members will receive notice by first class mail, (see Dkt. 80-1, Larsen Decl., Exh. 3, Amended Settlement Agreement at § V.D.), which will consist of the Notice of Pending Class, Collective and Representative Action Settlement, (see Dkt. 80-1, Larsen Decl., Exh. 2, ("Notice")), Opt-Out Form, (see <u>id.</u>, Exh. 4, Request for Exclusion Form), and a FLSA Opt-In Form (see <u>id.</u>, Exh. 5, FLSA Opt-In Form). The Notice describes the nature of the action and the claims alleged. (See Dkt. 80-1, Larsen Decl., Exh. 2, Notice at 1-2); see also Fed. R. Civ. P. 23(c)(2)(B)(i) & (iii). It provides the definition of the class, (see Dkt. 80-1, Larsen Decl., Exh. 2, Notice at 1); see also Fed. R. Civ. P. 23(c)(2)(B)(ii), and explains the terms of the settlement, including the settlement amount, the distribution of that amount, and the release. (See Dkt. 80-1, Larsen Decl., Exh. 2, Notice at 2, 4). It includes an explanation that lays out the class members' options under the settlement: they may remain in the class, object to the settlement but still remain in the class, or exclude themselves from the settlement and pursue their claims separately against defendant. (See <u>id.</u> at 3-5); see also Fed. R. Civ. P. 23(c)(2)(B)(v)-(vi). The Notice also explains the procedures for objecting to the settlement, (see Dkt. 80-1, Larsen Decl., Exh. 2, Notice at 4-5), and provides information about the Final Fairness Hearing. (See <u>id.</u>). Finally, the parties request that ILYM be appointed as settlement administrator to implement the notice process. (See Dkt. 73, Motion at 21); (Dkt. 80-1, Larsen Decl., Exh. 3, Amended Settlement Agreement at § V.A.).

Based on the foregoing, the court finds there is no alternative method of distribution that would be more practicable here, or any more reasonably likely to notify the class members.  In addition, the court finds that the procedure for providing notice and the content of the class notice constitute the best practicable notice to class members and comply with the requirements of due process.

E.     Summary.

The court's preliminary evaluation of the Amended Settlement Agreement does not disclose grounds to doubt its fairness "such as unduly preferential treatment of class representatives or segments of the class, inadequate compensation or harms to the classes, . . . or excessive compensation for attorneys[.]" Manual for Complex Litigation § 21.632 at 321 (4th ed. 2004); see also Spann, 314 F.R.D. at 323.

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

1.  Plaintiff's Motion for Preliminary Approval of Class Action Settlement **(Document No. 73)** is **granted** upon the terms and conditions set forth in this Order.

2.  The court preliminarily certifies the class, as defined in § II.2. of the Amended Settlement Agreement (Dkt. 80-1, Exh. 3), for the purposes of settlement.

3.  The court preliminarily appoints plaintiff Jade Ball as class representative for settlement purposes.

4.   The court preliminarily appoints Lebe Law and Haines Law as class counsel for settlement purposes.

5.  The court preliminarily finds that the terms of the settlement are fair, reasonable and adequate, and comply with Rule 23(e) of the Federal Rules of Civil Procedure.

6.  The court approves the form, substance, and requirements of the class Notice.  (See Dkt. 80-1, Exh. 2).  The proposed manner of notice of the settlement set forth in the Amended Settlement Agreement constitutes the best notice practicable under the circumstances and complies with the requirements of due process.

7.  The court appoints ILYM as settlement administrator. ILYM shall complete dissemination of class notice, in accordance with the Amended Settlement Agreement, no later than **October 15, 2022**.

8.  Plaintiff shall file a motion for an award of class representative incentive payment and attorney's fees and costs no later than **October 31, 2022,** and notice it for hearing for the date of the final approval hearing set forth below.

9.  Any class member who wishes to: (a) object to the settlement, including the requested attorney's fees, costs and incentive awards; (b) exclude him or herself from the settlement; and/or (c) opt in to the FLSA Collective Action must file his or her objection to the settlement, or request exclusion, and/or Opt-In form no later than **November 28, 2022**, in accordance with the Notice and this Order.

10.  Plaintiff shall, no later than **December 8, 2022,** file and serve a motion for final approval of the settlement and a response to any objections to the settlement.  The motion shall be noticed for hearing for the date of the final approval hearing set forth below.

11.  Defendant may file and serve a memorandum in support of final approval of the Amended Settlement Agreement and/or in response to objections no later than **December 15, 2022**.

12.  Any class member who wishes to appear at the final approval (fairness) hearing, either on his or her own behalf or through an attorney, to object to the settlement, including the requested attorney's fees, costs or incentive award, shall, no later than **January 12, 2023**, file with the court a Notice of Intent to Appear at Fairness Hearing.

13.  A final approval (fairness) hearing is hereby set for **January 26, 2023,** at **10:00 a.m.** in Courtroom 6D of the First Street Courthouse, to consider the fairness, reasonableness, and adequacy of the Settlement as well as the award of attorney's fees and costs to class counsel, and incentive awards to the class representatives.

14. All proceedings in the Action, other than proceedings necessary to carry out or enforce the Amended Settlement Agreement or this Order, are stayed pending the final fairness hearing and the court's decision whether to grant final approval of the settlement.

Dated this 30th day of August, 2022.


_____
/s/
Fernando M. Olguin
United States District Judge