Jonathan M. Lebe (State Bar No. 284605)
Jon@lebelaw.com
Annaliz Loera (State Bar No. 334129)
Annaliz@lebelaw.com
**Lebe Law, APLC**
777 S. Alameda Street, Second Floor
Los Angeles, CA 90021
Telephone: (213) 444-1973
Facsimile: (213) 457-3092

**HAINES LAW GROUP, APC**
Paul K. Haines (SBN 248226)
phaines@haineslawgroup.com
2155 Campus Drive, Suite 180
El Segundo, California 90245
Tel: (424) 292-2350
Fax: (424) 292-2228

Attorneys for Plaintiff, the Class
And Aggrieved Employees

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Sharon Britt, Andre Wall, Joshua Blalock, and Jade Ball, individually and on behalf of all others similarly situated, | Case No.: 2:20-cv-08023-FMO (ASx) |
| | **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| Plaintiffs, | |
| vs. | Judge: Hon. Fernando M. Olguin |
| | Date: January 26, 2023 |
| | Time: 10:00 a.m._____ |
| | Dept.: 6D |
| Southern California Edison Company, | |
| Defendant. | Complaint Filed: September 2, 2020 |
| | Trial Date: None Set |

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

NOTICE IS HEREBY GIVEN that on January 26, 2023 at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 6D of the United States District Court for the Central District of California, located at 350 West First Street, Los Angeles, California 90012, before the Honorable Fernando M. Olguin, Plaintiff Jade Ball ("Plaintiff") individually and on behalf of all others similarly situated, will, and hereby does, move this Court for an order pursuant to Fed. R. Civ. Proc. 23(e):

1. Finally certifying the proposed Settlement Classes under Rule 23(e) of the Federal Rules of Civil Procedure;

2. Granting final approval to the class, collective and representative action settlement based upon the terms set forth in the Amended Class, Collective, and Representative Action Settlement Agreement and Release ("Settlement Agreement") as fair, reasonable and adequate under Rule 23(e) of the Federal Rules of Civil Procedure;

3. Confirming Plaintiff's appointment as Class Representative for settlement purposes;

4. Confirming the appointment of Haines Law Group, APC and Lebe Law, APLC as Class Counsel for settlement purposes; and

5. Entering final judgment in the form of the proposed Final Judgment and Order Granting Final Approval filed herewith.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

This Motion is based upon this Notice; the attached Memorandum of Points and Authorities; the supporting Declaration of Madely Nava on Behalf of ILYM Group, Inc. Regarding Notice and Settlement Administration; the proposed Final Judgment and Order; the Settlement Agreement; all other pleadings, declarations, and other papers on file in this action; and any oral argument or other matter that may be considered by the Court.

Dated:  December 8, 2022

Respectfully submitted,
HAINES LAW GROUP, APC

By:    _/s/ Paul K. Haines_
Paul K. Haines, Esq.
Attorneys for Plaintiff, the Class, and Aggrieved Employees

# **TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................1

II. FACTUAL AND PROCEDURAL BACKGROUND.................................2

III. SUMMARY OF THE SETTLEMENT AND NOTICE PROCESS .................6

    A. Settlement Class Definition ...............................................6

    B. Monetary Terms of the Settlement ...................................6

    C. Summary of Notice Process.............................................7

IV. THE SETTLEMENT WARRANTS FINAL APPROVAL .............................8

    A. The Settlement Is Fair, Adequate, and Reasonable...................9

        1. The Strength of Plaintiff's Case ......................................9

        2. Risk, Expense, Complexity, and Duration of Further

           Litigation ..................................................13

        3. Risk of Maintaining Class Action Status ......................14

        4. Amount Offered in Settlement Is Reasonable Given the

           Realistic Value of Plaintiff's Claims in Light of the

           Significant Litigation Risks.........................................14

        5. Discovery Completed and the Stage of the Proceedings ...............14

        6. The Experience and Views of Counsel .........................15

        7. The Reaction of the Class Members to the Proposed

           Settlement ..................................................15

V. THE CLASS CERTIFICATION ENTERED BY THE COURT IN

    ITS PRELIMINARY APPROVAL ORDER SHOULD BE

    MAINTAINED..................................................16

VI. CONCLUSION..................................................16

# TABLE OF AUTHORITIES

**Federal Cases**

*Hanlon v. Chrysler Corp.*
    150 F.3d 1011 (9th Cir. 1998) ........................................................................9

*In re Heritage Bond Litig.*
    546 F.3d 667 (9th Cir. 2008) ..........................................................................8

*In re Omnivision Techs., Inc.*
    559 F.Supp. 2d 1036 (N.D. Cal. 2008) .........................................................15

*In re Pacific Enterprises Securities Litig.*
    47 F.3d 373 (9th Cir. 1995) ..........................................................................15

*In re Syncor ERISA litigation*
    516 F.3d 1095 (9th Cir. 2008) ........................................................................8

*Lynn's Food Stores, Inc. v. United States*
    679 F.2d 1350 (11th Cir. 1982) ......................................................................9

*Marshall v. Holiday Magic, Inc.*
    550 F.2d 1173 (9th Cir. 1977) ......................................................................15

*Murillo v. Pacific Gas & Electric Co.*
    266 F.R.D. 468 (E.D. Cal. 2010) ....................................................................9

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*
    221 F.R.D. 523 (C.D. Cal. 2004) .............................................................13, 15

*Rodriguez v. West Publishing Corp.*
    563 F.3d 948 (9th Cir. 2009) ..........................................................................9

**State Cases**

*Brinker Restaurant Corp. v. Superior Court*
    53 Cal.4th 1004 (2012) ................................................................................10

*Carrington v. Starbucks Corp.*
    30 Cal.App.5th 504 (2018) ...........................................................................13

*Gattuso v. Harte-Hanks Shoppers, Inc.*
  42 Cal.4th 554 (2007) ...................................................................................11

*Kao v. Joy Holiday*
  12 Cal.App.5th 947 (2017) ...........................................................................12

*Maldonado v. Epsilon Plastics, Inc.*
  22 Cal.App.5th 1308 (2018) .........................................................................12

*Price v. Starbucks Corp.*
  192 Cal.App.4th 1136 (2011) .......................................................................12

*Thurman v. Bayshore Transit Mgmt., Inc.*
  203 Cal.App.4th 1112 (2012) .......................................................................13


**State Statutes and Rules**

8 Cal. Code Regs. § 13520 ..............................................................................12

Labor Code § 2699(e)(2) .................................................................................12


**Unpublished Cases**

*Fleming v. Covidien, Inc.*
  No. ED-CV-10-1487-RGK(OPx)
  2011 WL 7563047 (C.D. Cal. Aug. 12, 2011) ..............................................13

*In re Portal Software, Inc. Sec. Litig.*
  No. C-03-5138 VRW
  2007 WL 4171201 (N.D. Cal. 2007) .............................................................13

*In re Wells Fargo Loan Processor Overtime Pay Litig.*
  MDL Docket No. C-07-1841 (EMC)
  2011 WL 3352460 (N.D. Cal. Aug. 2, 2011) ................................................15

*Schiller v. David's Bridal, Inc.*
  Case No. 1:10-cv-616-AWI-SKO
  2011 WL 2117001 (E.D. Cal. 2012) .............................................................16

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   **INTRODUCTION**

Plaintiff Jade Ball ("Plaintiff"), individually and on behalf of the proposed Settlement Class, seeks final approval of the Amended Class, Collective, and Representative Action Settlement Agreement and Release ("Settlement"), entered into by and between Plaintiff and Defendant Southern California Edison Company ("Edison" or "Defendant"). The Settlement provides for a <u>non-reversionary</u> Maximum Gross Settlement Amount of $3,222,500 to the following Settlement Class, which is comprised of 5,114 Participating Class Members:

> Any current or former non-union represented, non-exempt employee of Edison who worked for Edison in California from April 6, 2016 to November 23, 2021 (the "Class Period").

This Settlement also provides $200,000 as the "FLSA Settlement Amount" to be paid to all eligible Settlement Class members (i.e., those Settlement Class members who worked for Edison during the FLSA Settlement Period, which is September 2, 2017 to November 23, 2021) who opt-in to the FLSA claim by timely submitting a completed FLSA Opt-In Form. The Settlement also provides $100,000 as the "PAGA Net Settlement Amount" to resolve the claims made under the Labor Code Private Attorneys General Act of 2004, Labor Code sections 2698, *et esq.* ("PAGA").

Payments from the Net Settlement Amount shall be paid to all Participating Class Members *pro rata* based on each Participating Class Member's number of workweeks worked during the Class period.  Similarly, payments from the FLSA Settlement Amount shall be determined *pro rata* based on the number of workweeks worked by each eligible Class Member during the FLSA Settlement Period who submitted a FLSA Opt-In Form.

This Settlement came to fruition only after extensive formal and informal discovery; robust legal research and analysis; extensive investigation by the Parties and by Class Counsel; the exchange of extensive class-wide data and analysis of

1

that data; arm's-length settlement negotiations at a private mediation session with Gig Kyriacou, Esq., an experienced wage and hour class action mediator; as well as extensive negotiations after the mediation, which eventually led to the Settlement.

In its August 30, 2022, Order granting Plaintiff's Motion for Preliminary Approval, this Court preliminarily found that "the terms of the settlement are fair, reasonable and adequate, and comply with Rule 23(e) of the Federal Rules of Civil Procedure." Dkt. No. 81. Since this Court granted preliminary approval on August 20, 2022, nothing has changed to impact the propriety, fairness, adequacy and reasonableness of the Settlement. In fact, since Notice of the proposed Settlement was provided to the Settlement Class via U.S. first class mail on September 29, 2022, the response of the Settlement Class members has been extremely positive: not a single Settlement Class member has objected to the Settlement, 649 Settlement Class members have affirmatively opted-in under the Fair Labor Standards Acts ("FLSA"), and only thirty-two (32) Settlement Class members elected to opt-out of the Settlement, resulting in a **99.38%** participation rate. *See* Declaration of Madely Nava on Behalf of ILYM Group, Inc. Regarding Notice and Settlement Administration ("Nava Decl."), at ¶¶ 7, 12-14.

As explained below, the Court should grant Plaintiff's motion in its entirety because the Settlement Class continues to meet the requirements for class certification for settlement purposes under both Fed. R. Civ. Proc. 23 and the FLSA, and the Settlement warrants final approval because it is a fair, adequate, and reasonable compromise of the disputed claims in this case.

In light of the foregoing, Plaintiff respectfully submits that the Court should enter the [Proposed] Judgment and Order Granting Final Approval submitted herewith.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

On September 2, 2020, Sharon Britt filed the original Complaint. *See* Dkt.

No. 73-2 (Declaration of Jonathan M. Lebe In Support of Plaintiff Jade Ball's Unopposed Motion for Preliminary Approval of Class Action Settlement), at ¶ 10; *see also* Dkt. 1. The original Complaint alleged causes of action as a collective action under the FLSA: (1) Failure to Pay Overtime Wages in Violation of 29 U.S.C. § 207 and (2) Failure to Pay Minimum Wages in Violation of 29 U.S.C. § 206. *Id*.

On September 2, 2020, Sharon Britt and Andre Wall filed a Notice with the Labor & Workforce Development Agency ("LWDA") under the California Private Attorneys General Act ("PAGA") (Cal. Lab. Code § 2699.3) for alleged violations of the California Labor Code including: (1) Unlawful failure to pay all earned wages through Cal. Labor Code §§ 510, 1194, 204(a) and the applicable IWC Wage Order; (2) Unlawful failure to pay overtime through Cal. Labor Code §§ 201-203, 510, 1194, 558 and applicable IWC Wage Order; (3) Unlawful failure to pay minimum wage through Cal. Labor Code §§ 1194, 1197, 1197.1, 558, 201-203 and the applicable IWC Wage Order; (4) Unlawful failure to provide uninterrupted off-duty meal periods through Cal. Labor Code §§ 226.7, 512, 201-203, 226.7(b), 512, 558 and the applicable IWC Wage Order; (5) Unlawful failure to provide uninterrupted off-duty rest periods through Cal. Labor Code §§ 201-203, 226.7, 226.7, 512 and the applicable IWC Wage Order; (6) Unlawful failure to reimburse business expenses through Cal. Labor Code §§ 2802 and 558; (7) Unlawful failure to furnish wage statements through Cal. Labor Code §§ 226(a) and 226.3; (8) Failure to provide sick pay through Cal. Labor Code § 246, 246(b)(1); and (9) Unlawful failure to pay final wages/vacation wages through Cal. Labor Code §§ 201-203 and 227.3. *See* Dkt. No. 73-2, at ¶ 11.

On November 9, 2020, Sharon Britt filed a First Amended Complaint ("FAC") adding nine causes of action under Fed. R. Civ. Proc. Rule 23 and a cause of action requesting PAGA penalties. *See* Dkt. No. 11; Dkt. No. 73-2, at ¶ 12. The added causes of action included: (1) Failure to pay minimum wages in violation of

Cal. Labor Code §§ 1182.12, 1194, 1194.2, 1197 and IWC Wage Order § 3; (2) Failure to pay overtime wages in violation of Cal. Labor Code §§ 510, 1194, and 1198 and IWC Wage Order; (3) Failure to timely pay all earned wages in violation of Cal. Labor Code §§ 204, 210 and IWC Wage Order; (4) Failure to provide meal periods in violation of Cal. Labor Code §§ 226.7 and 512, and IWC Wage Order; (5) Failure to permit rest breaks in violation of Cal. Labor Code §§ 226.7 and IWC Wage Order; (6) Failure to provide accurate itemized wage statements in violation of Cal. Labor Code § 226 and IWC Wage Order; (7) Failure to pay all wages due upon separation of employment and within the required time in violation of Cal. Labor Code §§ 201-203 and IWC Wage Order; (8) Failure to reimburse all business expenses in violation of Cal. Labor Code §§ 2800 and 2802; (9) Violation of Business & Professions Code §§ 17200, *et seq.*, and (10) PAGA civil penalties. *Id*.

On April 23, 2021, Sharon Britt and Andre Wall, along with Joshua Blalock and Plaintiff Ball, submitted an Amended PAGA Notice to the LWDA which added allegations to their claims of violations. *See* Dkt. No. 73-2, at ¶ 13. On May 13, 2021, Sharon Britt, Andre Wall, Joshua Blalock, and Plaintiff Ball filed a second Amended PAGA Notice with the LWDA to add a claim under Cal. Labor Code § 1174 for failure to furnish wage statements and keep accurate records. *Id.,* at ¶ 14.

On June 25, 2021, a Second Amended Complaint ("SAC") was filed for violations of the California Labor Code, Fair Labor Standards Act, and Industrial Welfare Commission Wage Order after receiving leave from the Court. *See* Dkt. 46. The SAC added Andre Wall, Joshua Blalock, and Plaintiff Ball as named plaintiffs and added additional factual allegations. *Id*.

On July 30, 2021, after a stipulation by the Parties and the Court granting leave, a Third Amended Complaint ("TAC") was filed for violations of the California Labor Code, Fair Labor Standards Act, and Industrial Welfare Commission Wage Order, including the following causes of action:: (1) Failure to pay minimum wages (FLSA); (2) Failure to pay overtime wages (FLSA); (3)

Failure to pay minimum wages; (4) Failure to pay overtime wages; (5) Failure to timely pay all earned wages; (6) Failure to provide meal periods; (7) Failure to permit rest breaks; (8) Failure to provide accurate itemized wage statements; (9) Failure to pay all wages due upon separation of employment and within the required time: (10) Failure to reimburse all business expenses; (11) Violation of Business & Professions Code § 17200, *et seq.*; and (12) PAGA civil penalties. *See* Dkt. No. 73-2, at ¶ 16.

On August 11, 2021, after months of engaging in both formal and informal discovery, motion practice, and extensive litigation, the Parties participated in an arm's-length mediation with Gig Kyriacou, Esq., an experienced wage and hour class action mediator. *See* Dkt. No. 73-2, at ¶ 19. Although the case did not settle at mediation, Mr. Kyriacou made a mediator's proposal that was ultimately accepted by the parties. *Id*. The parties worked over the following months to finalize the finer points of the Settlement.

On December 15, 2021, Plaintiff filed her Motion for Preliminary Approval of Class Action Settlement. Dkt. No. 73. The parties appeared in Court on January 20, 2022 for the hearing on Plaintiff's Motion for Preliminary Approval of Class Action Settlement, where the Court directed Plaintiff to file a supplemental declaration and exhibits, including a revised Settlement Agreement. Dkt. No. 75. The parties subsequently amended the Settlement to address the Court's concerns and submitted the amended Settlement to the Court along with supplemental briefing on March 14, 2022. Dkt. Nos. 80; 80-1. On August 30, 2022, this Court granted preliminary approval of the Settlement. Dkt. No. 81.

On September 29, 2022, the Court-approved Notice was provided to 5,146 Settlement Class members, and Settlement Class members had until November 28, 2022, to submit objections, disputes, requests for exclusions, and to opt-in to the FLSA Settlement. *See* Nava Decl., ¶¶ 7, 12-14. As of the date of this filing, there have been no objections and only 32 requests for exclusion, resulting in a 99.38%

participation rate. *Id*., at ¶¶ 12-14. Moreover, 649 Settlement Class members have opted-in to the FLSA Settlement. *Id*., at ¶ 14. Now that the Notice process is complete, Plaintiff respectfully submits the Settlement for final approval.

## III.   SUMMARY OF THE SETTLEMENT AND NOTICE PROCESS

### A.   Settlement Class Definition

The Settlement Class encompasses "any current or former non-union represented, non-exempt employee of Edison who worked for Edison in California during the Class Period (i.e., April 6, 2016 to November 23, 2021)." *See* Amended Settlement, §§ II. 2, 4; Dkt. No. 81.

### B.   Monetary Terms of the Settlement

The Settlement provides for Edison to pay a Maximum Gross Settlement Amount of $3,222,500.00. Nava Decl., ¶ 16. The Net Settlement Amount ("NSA") is the amount remaining from the Maximum Gross Settlement Amount after deducting requested attorneys' fees ($805,625.00) and verified litigation costs ($42,543.03), proposed Class Representative Service Award to Plaintiff ($7,500.00), Settlement Administration fees ($44,894.00), and payment to the Labor & Workforce Development Agency ("LWDA") ($75,000.00). Based on these requested amounts, the NSA is calculated to be approximately $2,246,937.97. Nava Decl., ¶ 16.

The Net Settlement Amount shall be allocated as follows: First, One Hundred Thousand Dollars and Zero Cents ($100,000.00) shall de designated the "PAGA Net Settlement Amount" and shall be distributed 75% to the LWDA and 25% to all Settlement Class members who worked for Edison in California during the PAGA Period, *pro rata* based on their number of pay periods worked during the PAGA Period. *See* Amended Settlement Agreement, §§ II.23, 28-29; IV.D. Second, Two Hundred Thousand Dollars and Zero Cents ($200,000.00) shall be designated as the FLSA Settlement Amount and shall be distributed to the 649 Opt-In Plaintiffs *pro rata* based on each Opt-In Plaintiff's number of Workweeks worked during the

Class Period. *See* Amended Settlement Agreement, § IV.D.  The remainder of the Net Settlement Amount ("Net Settlement Amount Remainder") will be paid to all Participating Class Members, *pro rata*, based on each Participating Class Member's number of Workweeks worked during the Class Period. *Id*.

Payments to Settlement Class members from the Net Settlement Amount Remainder will be classified 66.67% as penalties and interest to be reported on a IRS Form 1099-MISC, and 33.33% as wages to be reported on a IRS Form W-2. *See* Amended Settlement Agreement, § IV.H. Payments from the PAGA Net Settlement Amount shall be treated as 100% as penalties and reported on an IRS Form 1099-MISC. *Id*. Edison's share of employer payroll taxes shall be paid by Edison separately and in addition to the Maximum Gross Settlement Amount. *See* Amended Settlement Agreement, §§ IV.C; IV.H.1.

## C.   **Summary of Notice Process**

On September 20, 2022, Edison provided the Settlement Administrator, ILYM Group, Inc. ("ILYM"), with the names, social security numbers, last known mailing addresses, and the total number of applicable workweeks for all 5,146 Settlement Class members.  Nava Decl., ¶ 5.  As part of the preparation for mailing, all 5,146 names and addresses contained in the Class List were then processed against the National Change of Address ("NCOA") database, for purposes of updating and confirming the mailing addresses of the Settlement Class Members before mailing of the Notice Packet. *Id*., at ¶ 6. To the extent that an updated address was found in the NCOA database, the updated address was used for the mailing of the Notice Packet. *Id*. To the extent that no updated address was found in the NCOA database, the original address provided by Edison was used for the mailing of the Notice Packet.  *Id*.

After performing address updates and verifications, ILYM mailed the Notice Packet (consisting of the Notice of Pending Class, Collective, and Representative Action Settlement ("Class Notice"), FLSA Opt-In Form, and Request for Exclusion

Form) to the 5,146 Settlement Class members on September 29, 2022.  Nava Decl., ¶ 7.  Following the initial mailing, 129 Notice Packets were returned to ILYM as undeliverable.  *Id*., ¶ 9.  As a result of a skip trace or forwarding address provided by the Post Office, 88 Notice Packets were re-mailed.  *Id*., ¶ 10.  As of the date of filing this final approval motion, there are a total of 41 Notice Packets that remain undeliverable because there was no forwarding address and/or no new address could be located through skip trace.  *Id*., ¶¶ 10-11.

Settlement Class members had until November 28, 2022 to submit objections, requests for exclusion, disputes, and the FLSA Consent Form.  Nava Decl., ¶¶ 12-15.  **There were no objections submitted and only 32 Settlement Class members have elected to opt-out of the Settlement.**  *Id*., ¶¶ 12-13.  There was only one (1) dispute submitted, which has been resolved. *Id*., ¶ 15. Additionally, a total of 649 Class Members submitted the FLSA Opt-In Form and are now FLSA Opt-In Members.  *Id*., at ¶ 14.  Accordingly, Participating Class Members will receive an estimated average gross payment of $393.83, with the estimated highest gross payment being $739.06. *Id*., at ¶ 16. Participating FLSA Members will receive an estimated average gross payment of $308.17, with the estimated highest gross payment being $401.02. *Id*. Aggrieved Employees will receive an estimated average gross payment of $6.68, with the estimated highest gross payment being $8.78. *Id*.

## IV.   THE SETTLEMENT WARRANTS FINAL APPROVAL

A class action can be "settled, voluntarily dismissed, or compromised only with the court's approval." *See* Fed. R. Civ. Proc. 23(e). Thus, in order to approve a proposed settlement, the Court must conclude that the proposed settlement is "fair, adequate and reasonable," and is the product of arm's-length and informed negotiations. *See In re Heritage Bond Litig.*, 546 F.3d 667, 674 (9th Cir. 2008). In the Ninth Circuit, "there is a strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *See In re Syncor ERISA litigation*, 516 F.3d 1095, 1101 (9th Cir. 2008) (citation omitted).

Judicial approval of an FLSA settlement is also necessary to effectuate a valid and enforceable release of FLSA claims. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). Therefore, the Court should approve the release of FLSA claims if it appears to be the result of contested litigation to resolve a *bona fide* dispute between the parties. *Id.,* at 1355. Because the factors in evaluating a proposed settlement under the FLSA and FRCP Rule 23 assess the same factors, Plaintiff's analysis of the Rule 23 factors is equally applicable to the settlement of the FLSA claim. *Compare Murillo v. Pacific Gas & Electric Co.*, 266 F.R.D. 468, 477-478 (E.D. Cal. 2010) with *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009).

### A.    The Settlement Is Fair, Adequate, and Reasonable

In determining whether a proposed class action settlement is "fair, reasonable, and adequate," the Court must balance a number of factors: the strength of plaintiffs' case; the risk, expense, complexity and likely duration of further litigation; the risk of maintaining class action status through trial; the amount offered in settlement; the extent of discovery completed and the stage of proceedings; the experience and views of counsel; the presence of a government participant; and the reaction of the class members to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  Plaintiff addresses each relevant factor below.[1]

### 1.    The Strength of Plaintiff's Case

While Plaintiff maintains her claims are meritorious, Plaintiff acknowledges that Edison presented multiple defenses. These defenses—and their accompanying risks—were discussed at length in Plaintiff's Motion for Preliminary Approval. *See* Dkt. No. 73. Plaintiff recounts some of these risks below.

As detailed in Plaintiff's Motion for Preliminary Approval, there is a

---

[1] Because there are no government participants in the instant lawsuit, Plaintiff has omitted the seventh factor from discussion.

significant risk of non-certification and/or not prevailing on the merits with respect to each of Plaintiff's claims. For example, with respect to Plaintiff's meal period claim, Edison argues it has always maintained a legally compliant meal period policy, has always provided meal periods consistent with that policy, and that it is only required to "provide" the opportunity to take meal periods, not "ensure" they are taken. *See* Dkt. No. 73-1 (Declaration of Paul K. Haines In Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement), at ¶ 16; *see also Brinker Restaurant Corp. v. Superior Court,* 53 Cal.4th 1004, 1038 (2012) (rejecting "ensure" standard). Further, the timekeeping data provided by Edison revealed only 9% of first meal periods were non-compliant, which Edison argues demonstrates that employees generally receive first meal periods and that any meal period violations reflected in the records were a result of lawful employee waiver or choice, rather than any Edison policy or practice, thereby precluding liability. Dkt No. 73-1, at ¶ 16. Edison also points to the fact that it has paid over 4,500 meal period premiums as further evidence that it takes its meal period obligations seriously, and that any missed meals are aberrations, not a result of any Edison policy or practice. *Id*. Finally, Edison argues individualized inquiries would be needed to determine whether each employee missed or took a late meal period on each shift, *why* any given meal period was taken late or missed, and whether the employee validly waived the meal period, thereby making certification of this claim unlikely. *Id*.

With respect to Plaintiff's rest period claim, Edison argues it has always maintained and enforced lawful rest period policies and practices during the Class Period. Dkt No. 73-1, at ¶ 17. Edison also maintains that any failure to take rest periods was the result of employee choice, and that it is not required to police rest periods, only to authorize and permit them as established in *Brinker*, *supra*, 53 Cal.4th at 1040 (finding that an employer is not obligated to police meal and rest periods). *Id*. Finally, Edison contends that Plaintiff's rest period claim is not

amenable to class treatment as individualized inquiries would be required to determine which employees failed to take rest periods, and the reasons why each employee failed to take a rest period on a particular shift. *Id*.

With respect to Plaintiff's failure to reimburse business expenses claim, Edison argues that this claim would require individual inquiries into whether Settlement Class members actually used their personal cellular phones and home internet service for work purposes, how much expense they incurred, whether they submitted a request for reimbursement, and the reasonableness of that expense, thus precluding class certification. Dkt No. 73-1, at ¶ 18. *see also*, *e.g.*, *Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal.4th 554, 568 (2007) ("In calculating the reimbursement amount due under section 2802, the employer may consider not only the actual expenses that the employee incurred, but also whether each of those expenses was 'necessary,' which in turn depends on the reasonableness of the employee's choices"). Moreover, Edison produced evidence that it in fact paid Settlement Class members a $20 per month stipend for home internet services starting on October 16, 2020, which Edison contends is more than adequate to cover any "reasonable" work-related home Internet or cell phone expense. Dkt No. 73-1, at ¶ 18.

With respect to Plaintiff's unpaid wages claim, Edison contends that it maintained lawful timekeeping policies and/or practices, expressly prohibited off-the-clock work, and compensated employees for all hours actually worked. Dkt No. 73-1, at ¶ 19. Edison also asserts that this claim is not amenable to class certification as individualized inquiries would be required to determine whether each employee performed off-the-clock work on a particular shift, and whether Edison was aware that such work was being performed. *Id*.

With respect to Plaintiff's unpaid overtime wages based on regular rate miscalculations, Edison points to its CBA applicable to union-represented employees and contends that the CBA exempts Edison from providing overtime

wages to its union-represented employees. Dkt No. 73-1, at ¶ 20.

With respect to Plaintiff's final wage payment and wage statement claims, Edison argues that it possesses strong, good faith defenses to Plaintiff's underlying claims, thus precluding recovery of waiting time penalties, which are only available for the "willful" failure to pay wages. Dkt No. 73-1, at ¶ 22; *see* 8 Cal. Code Regs. § 13520 (a "good faith dispute that any wages are due will preclude imposition of waiting time penalties"); *Kao v. Joy Holiday*, 12 Cal.App.5th 947, 963 (2017) (holding "good faith dispute" over employee's exempt status precluded imposition of waiting time penalties over contested wages). Edison further contends that any alleged wage statement violations could not be shown to be "knowing and intentional," particularly given its good-faith defenses; that Plaintiff cannot show she or other employees "suffer[ed] injury" due to alleged wage statement violations, as required by Lab. Code § 226(e); and that wage statements always accurately reflected amounts *paid* to employees. Dkt No. 73-1, at ¶ 21; *Maldonado v. Epsilon Plastics, Inc.*, 22 Cal.App.5th 1308, 1337 (2018) ("The purpose of section 226 is to 'document the paid wages to ensure the employee is fully informed regarding the calculation of those wages'").

With respect to Plaintiff's PAGA claim, Edison contends that the PAGA claim fails because the underlying claims fail. Dkt No. 73-1, at ¶ 23; *see Price v. Starbucks Corp.*, 192 Cal.App.4th 1136, 1147 (2011) ("Because the underlying causes of action fail, the derivative UCL and PAGA claims also fail."). Edison also argues that the PAGA claim would not be manageable, since individual inquiries would be needed to determine whether employees actually received and/or waived their meal or rest period(s) on any given shift, and whether each employee was reimbursed for all necessary business expenses. Dkt No. 73-1, at ¶ 23. Edison also asserts that this Court would utilize its discretion under Labor Code section 2699(e)(2) to significantly reduce any PAGA civil penalties, in light of Edison's good-faith defenses. *Id.*; *see* Labor Code § 2699(e)(2) (authorizing reduction in

PAGA penalties in trial court's discretion); *Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal.App.4th 1112, 1135 (2012) (affirming reduction of PAGA penalties); *Fleming v. Covidien, Inc.*, No. ED-CV-10-1487-RGK(OPx), 2011 WL 7563047 at *4 (C.D. Cal. Aug. 12, 2011) (reducing PAGA penalties from $2.8 million to $500,000); *Carrington v. Starbucks Corp.,* 30 Cal.App.5th 504, 529 (2018) (affirming PAGA penalty of just $5 per pay period where employer made "good faith attempts" to comply with the law).

These considerations not only bore heavily on the Parties' negotiations, but also confirm that the Settlement is a fair and reasonable compromise in view of the risk of further litigation. Indeed, "[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quotations omitted). Thus, this factor supports final approval.

## 2.   <u>Risk, Expense, Complexity, and Duration of Further Litigation</u>

Although the parties engaged in significant informal and formal discovery, investigation, and classwide data analysis, they had not completed formal discovery. Dkt No. 73-1, at ¶¶ 12, 28. Edison had also filed a Motion to Dismiss several of the claims alleged in the TAC (Dkt. 58), which was pending at the time the parties reached the Settlement. *Id*. Preparation for class certification and trial remained for the parties, as well as the prospect of potential appeals. *Id*. Thus, the parties would incur considerably more attorneys' fees and costs through trial. This settlement avoids those risks and accompanying expense. *See In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 4171201 at *3 (N.D. Cal. 2007) ("inherent risks of proceeding to summary judgment, trial and appeal also support the settlement"). Thus, this factor favors preliminary approval.

/ / /

### 3.    Risk of Maintaining Class Action Status

Plaintiff had not yet moved for class certification. Absent settlement, there was a risk that there would not be a certified class at the time of trial, and that the Settlement Class members would not recover anything. Dkt No. 73-1, at ¶ 28. As discussed *infra*, Edison asserted several defenses to class certification which raised substantial risks associated with certifying the class. Thus, this factor also supports preliminary approval.

### 4.    Amount Offered in Settlement Is Reasonable Given the Realistic Value of Plaintiff's Claims in Light of the Significant Litigation Risks

As discussed in detail in Plaintiff's Motion for Preliminary Approval, the non-reversionary $3,222,500.00 Maximum Gross Settlement Amount is reasonable given the realistic value of Plaintiff's claims and the risks inherent in pushing those claims forward. *See* Dkt. No. 73. Moreover, as discussed above, the risks that attended to Plaintiff's claims further demonstrate the reasonableness of the Settlement. As this Court found in its Preliminary Approval Order, "[t]he court preliminarily finds that the terms of the settlement are fair, reasonable and adequate, and comply with Rule 23(e) of the Federal Rules of Civil Procedure." Dkt. No. 81 at p. 21. Nothing has changed since that time to call the Court's determination into question. Moreover, given the amount recovered in this action, with Settlement Class members on average receiving $393.83 each, the amount recovered in this Settlement favors final approval.

### 5.    Discovery Completed and the Stage of the Proceedings

The parties engaged in significant investigation, formal classwide discovery, informal classwide discovery, and analysis prior to reaching the proposed settlement. *See* Dkt No. 73-1, ¶¶ 11-12; Dkt No. 73-2, ¶¶ 17-18. As noted above, Edison provided detailed data regarding Settlement Class Members' timekeeping and payroll data, its relevant wage and hour policies, and Plaintiff extensively

analyzed the data to come up with various exposure models. *Id*. It was only after this exchange of comprehensive data and information that the parties participated in a full-day mediation with an experienced wage and hour mediator, engaged in post-mediation negotiations, and ultimately reached the settlement by way of a mediator's proposal. *Id*. This factor supports final approval.

### 6.    The Experience and Views of Counsel

The recommendations of plaintiff's counsel are given a presumption of reasonableness. *See, e.g., In re Omnivision Techs., Inc.*, 559 F.Supp. 2d 1036, 1043 (N.D. Cal. 2008). "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pacific Enterprises Securities Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Here, Plaintiff is represented by experienced wage and hour class action counsel who collectively have decades of wage and hour class action experience, and who have successfully served as lead counsel in certifying and settling numerous class actions both in federal and state courts of California. *See* Dkt No. 73-1, at ¶¶ 3-8; Dkt No. 73-2, at ¶¶ 3-9. This factor strongly supports final approval. *See, e.g., In re Wells Fargo Loan Processor Overtime Pay Litig.*, MDL Docket No. C-07-1841 (EMC), 2011 WL 3352460 at *8 (N.D. Cal. Aug. 2, 2011) ("When experienced counsel conclude that a proposed settlement agreement is fair, such a conclusion is entitled to great weight.") (quotation omitted).

### 7.    The Reaction of the Class Members to the Proposed Settlement

A court may infer that a class action settlement is fair, adequate, and reasonable when few class members object. *See Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977). "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members." *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 529 (C.D. Cal 2004).

Here, the class member response to the Settlement has been overwhelmingly positive. Not a single Class Member has objected to the Settlement, 649 Settlement Class members have affirmatively opted-in under FLSA, and only thirty-two (32) Settlement Class members elected to opt-out of the Settlement, resulting in a **99.38%** participation rate. *See* Nava Decl., ¶¶ 12-14. The overwhelmingly positive reaction of the Settlement Class Members to the Settlement supports final approval.

## V. <u>THE CLASS CERTIFICATION ENTERED BY THE COURT IN ITS PRELIMINARY APPROVAL ORDER SHOULD BE MAINTAINED</u>

In its August 30, 2022, order granting preliminary approval, this Court certified the Settlement Classes for settlement purposes. *See* Dkt. No. 81. Because circumstances have not changed, and for the reasons set forth in her Motion for Preliminary Approval (Dkt. No. 73), Plaintiff requests that the Court finally certify the Classes for settlement purposes. *See Schiller v. David's Bridal, Inc.,* Case No. 1:10-cv-616-AWI-SKO, 2011 WL 2117001 at *8 (E.D. Cal. 2012) ("As initially determined in the Court's preliminary approval order and as set forth above, the Rule 23(a) requirements for class certification have been satisfied.").

## VI. <u>CONCLUSION</u>

For the reasons set forth herein, Plaintiff respectfully requests that the Court grant this Motion in its entirety and enter the order granting final approval of the settlement filed concurrently herewith.

Dated: December 8, 2022

Respectfully submitted,
HAINES LAW GROUP, APC

By:   <u>*/s/Paul K. Haines*   </u>
Paul K. Haines
Attorneys for Plaintiff, the Class, and
Aggrieved Employees

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT