UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARON BRITT, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SOUTHERN CALIFORNIA EDISON,<br><br>Defendant. | Case No. CV 20-8023 FMO (ASx)<br><br>**ORDER RE: FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

Having reviewed and considered plaintiff's Motion for Final Approval of Class Action Settlement (Dkt. 83, "Motion") and Motion for Attorneys' Fees, Litigation Expenses, Administration Costs, and Class Representative Service Award (Dkt. 82, "Fee Motion"), and the oral argument presented during the final fairness hearing held on January 26, 2023, the court concludes as follows.

**BACKGROUND**

Sharon Britt ("Britt") filed a class and collective action complaint asserting overtime and minimum wage violations under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., against defendant Southern California Edison Company ("defendant") on September 2, 2020. (Dkt. 1, Complaint at ¶¶ 14-25).  Britt later filed a First Amended Complaint ("FAC") adding state-law wage and hour claims and an unfair competition claim, (see Dkt. 11, FAC at ¶¶ 43-104), and a Second Amended Complaint ("SAC") adding Jade Ball ("Ball"), Joshua Blalock ("Blalock"), and

Andre Wall ("Wall") as named plaintiffs. (See Dkt. 46, SAC at ¶ 1). Following a meet and confer in anticipation of defendant's motion to dismiss the SAC, the parties stipulated to the filing of a Third Amended Complaint ("TAC"). (See Dkt. 56, Court's Order of July 19, 2021).

On July 30, 2021, Ball, Blalock, Britt, and Wall filed the operative TAC, asserting claims for: (1) failure to pay minimum wages under the FLSA, 29 U.S.C. §§ 206, 211 & 29 C.F.R. § 516.2(b); (2) failure to pay overtime wages under the FLSA, 29 U.S.C. §§ 207, 211 & 29 C.F.R. § 516.2(b); (3) failure to pay minimum wages under state law, Cal. Lab. Code §§ 1182.12, 1194, 1194.2, 1197; (4) failure to pay overtime wages under state law, Cal. Lab. Code §§ 510, 1194, 1198; (5) failure to timely pay all earned wages under state law, Cal. Lab. Code §§ 204, 210; (6) failure to provide meal periods under state law, Cal. Lab. Code §§ 226.7, 512; (7) failure to permit rest breaks under state law, Cal. Lab. Code § 226.7; (8) failure to provide accurate itemized wage statements under state law, Cal. Lab. Code § 226; (9) failure to pay all wages due upon separation of employment and within the required time under state law, Cal. Lab. Code §§ 201, 202, 203; (10) failure to reimburse all business expenses under state law, Cal. Lab. Code §§ 2800, 2802; (11) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq.; and (12) Private Attorneys General Act ("PAGA") civil penalties. (See Dkt. 57, TAC at ¶¶ 29-111).

Pursuant to the Court's Scheduling and Case Management Order ("CMO"), (see Dkt. 23, CMO at 17), the parties held a private mediation on August 11, 2021, and agreed to consider the mediator's proposal for settlement. (See Dkt. 61, Joint Post-Mediation Status Report and Notice of Settlement at 3); (Dkt. 81, Court's Order of August 30, 2022 ("PAO") at 2). Meanwhile, defendants filed a motion to dismiss the TAC on August 20, 2021. (See Dkt. 58, Motion to Dismiss Causes of Action in Plaintiffs' Third Amended Complaint []).

On August 25, 2021, the parties agreed to the mediator's proposal and filed their Notice of Settlement. (See Dkt. 61, Joint Post-Mediation Status Report and Notice of Settlement at 3); (Dkt. 81, PAO at 2). Because union members Blalock, Britt, and Wall concluded that a collective bargaining agreement would likely bar them from settling claims on behalf of union employees, they agreed to resolve their claims on an individual basis, and dismiss the class claims of the

union employees without prejudice. (See Dkt. 81, PAO at 2). The parties memorialized the terms of the settlement in December 2021, and filed an amended settlement agreement in March 2022 after a hearing on the Motion for Preliminary Approval of Class Action Settlement. (See Dkt. 73); (Dkt. 75, Court's Order of January 20, 2022); (Dkt. 81, PAO at 2-3).

The parties have defined the settlement class as "any current or former non-union represented, nonexempt employee of Defendant who worked for Defendant in California during the Class Period." (See Dkt. 80-1, Declaration of Neil M. Larsen [], Exhibit ("Exh.") 3, Class, Collective, and Representative Action Settlement Agreement and Release ("Amended Settlement Agreement") at § II.2.). Pursuant to the settlement, defendant will pay a non-reversionary gross settlement amount of $3,222,500, (see id. at § IV.C.), which will be used to pay class members, participating FLSA collective members, PAGA recipients, the class representative's service payment, settlement administration costs, the PAGA payment to the California Labor & Workforce Development Agency ("the LWDA"), and attorney's fees and costs. (See id. at § IV.C.). The settlement provides for up to $805,625 (approximately 25% of the gross settlement amount) in attorney's fees, (id. at § IV.E.); up to $45,000 in costs, (id.); a $7,500 service payment for Ball, (id. at § IV.F.); and a $75,000 payment to the LWDA. (Id. at § IV.D.). Also, the settlement administrator, ILYM Group, Inc. ("ILYM"), shall be paid no more than $50,000 from the gross settlement amount. (Id. at §§ IV.G. & V.A.). The resulting net settlement amount is expected to be at least $2,239,375, which includes $200,000 for FLSA opt-in members and $100,000 for the PAGA settlement amount, including $25,000 as the 25% PAGA employee allocation.[1] (Id. at §§ II.23 & IV.D.). The remainder of the net settlement amount will be paid on a pro rata basis to all participating class members. (Id. at § IV.D.); (see Dkt. 81, PAO at 3).

On August 30, 2022, the court granted preliminary approval of the settlement, appointed ILYM as the settlement administrator, and directed ILYM to provide notice to class members.

---

[1] In the Motion, plaintiff estimates that the net settlement amount is at least $2,246,937.97. (See Dkt. 83, Motion, Memorandum of Points and Authorities ("Memo.") at 6); (Dkt. 83-1, Declaration of Madely Nava on Behalf of ILYM Group, Inc. Regarding Notice and Settlement Administration ("Nava Decl.") at ¶ 16).

(Dkt. 81, PAO at 21-22). ILYM implemented the notice program approved by the court via first class mail. (See id. at 20-21); (Dkt. 83-1, Nava Decl. at ¶¶ 4-11); (id., Exh. A, Notice of Pending Class, Collective and Representative Action Settlement ("Class Notice")). As of December 8, 2022,[2] ILYM had received 32 requests for exclusion, (see Dkt. 83-1, Nava Decl. at ¶ 12), and no objections.[3] (See id. at ¶ 13); (see, generally, Dkt.) (no objections received by the court).

Plaintiff now seeks: (1) final approval of the settlement; (2) attorney's fees and costs; and (3) an incentive payments for plaintiff. (See Dkt. 83, Motion); (Dkt. 82, Fee Motion).

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 23[4] provides that "[t]he claims, issues, or defenses of a certified class . . . may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "Courts reviewing class action settlements must ensure that unnamed class members are protected from unjust or unfair settlements affecting their rights, while also accounting for the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." Campbell v. Facebook, Inc., 951 F.3d 1106, 1121 (9th Cir. 2020) (internal quotation and alteration marks omitted). A "district court has a fiduciary duty to look after the interests of . . . absent class members[,]" Allen v. Bedolla, 787 F.3d 1218, 1223 (9th Cir. 2015), and must examine the settlement for "overall fairness[.]" In re Hyundai and Kia Fuel Economy Litig., 926 F.3d 539, 569 (9th Cir. 2019) (en banc). The court may not "delete, modify or substitute certain provisions." Id. (internal quotation marks omitted). "[T]he settlement must stand or fall as a whole." Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F., 688 F.2d 615, 630 (9th Cir. 1982).

---

[2] The deadline for class members to opt-out or file objections to the settlement was November 28, 2022. (See Dkt. 81, PAO at 22); (Dkt. 83-1, Nava Decl. at ¶¶ 12-13).

[3] As of December 2022, ILYM received 649 valid FLSA Collective Opt-In Forms. (See Dkt. 83-1, Nava Decl. at ¶ 14).

[4] All further "Rule" references are to the Federal Rules of Civil Procedure.

4

Approval of a class action settlement requires the court to conduct a two-step inquiry.[5] First, the court must determine whether the notice requirements of Rule 23(c)(2)(B) have been satisfied. Second, it must conduct a hearing to determine whether the settlement is "fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e)(2). In determining whether a settlement is fair, reasonable, and adequate, the court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Id.; McKinney-Drobnis v. Oreshack, 16 F.4th 594, 607 (9th Cir. 2021) ("In 2018, Congress amended Rule 23(e)(2) to provide specific factors for a district court to consider in determining whether a settlement is 'fair, reasonable, and adequate.'").

Whether the settlement agreement is negotiated prior to or after class certification, the court must apply a "higher level of scrutiny for evidence of collusion or other conflicts of interest[.]" In re Bluetooth Headset Prod. Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011); see McKinney-Drobnis, 16 F.4th at 608 (same); Briseno v. Henderson, 998 F.3d 1014, 1022 (9th Cir. 2021) ("Under the newly revised Rule 23(e)(2), courts should apply the Bluetooth factors even for post-class certification settlements.") (formatting omitted); id. at 1025 (holding that "courts must apply Bluetooth's heightened scrutiny to post-class certification settlements in assessing whether the

---

[5] If the class action is governed by the Class Action Fairness Act ("CAFA"), the court must also assess whether CAFA's notice requirements have been met. See 28 U.S.C. § 1715(d). Here, CAFA notice was provided to appropriate state and federal agencies, and no responses were received. (See Dkt. 93, Supplemental Brief in Support of Motion for Final Approval of Class Action Settlement at 7); (Dkt. 93-1, Declaration of Sean M. Blakely [] at ¶ 5).

division of funds between the class members and their counsel is fair and 'adequate'") (citing Fed. R. Civ. P. 23(e)(2)(C)).  Courts should look for signs of collusion, subtle or otherwise, including "(1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded[;]" "(2) when the parties negotiate a 'clear sailing' arrangement[;]"[6] and "(3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund[.]"  Bluetooth, 654 F.3d at 947 (internal quotation marks and citations omitted); Campbell, 951 F.3d at 1125 (same).

## DISCUSSION

I.   FINAL APPROVAL OF CLASS SETTLEMENT.

   A.   Class Certification.

In its order granting preliminary approval, the court certified the class pursuant to Rule 23(b)(3).  (See Dkt. 81, PAO at 11-15, 21).  Because circumstances have not changed, the court hereby affirms its order certifying the class for settlement purposes under Rule 23(e).  See, e.g., Gonzalez v. BMC West, LLC, 2018 WL 6318832, *5 (C.D. Cal. 2018) ("In its Preliminary Approval Minute Order, the Court certified the Settlement Class in this matter under Rules 23(a) and 23(b)(3).  Accordingly, the Court need not find anew that the settlement class meets the certification requirements of Rule 23(a) and (b).") (internal quotation marks and citation omitted).

   B.   Rule 23(c) Notice Requirements.

Class actions brought under Rule 23(b)(3) must satisfy the notice provisions of Rule 23(c)(2), which require the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  See Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice requirements for classes certified under Rule 23(b)(3)).

Here, after undertaking the required examination, the court approved the form of the Class

---

[6]  The Ninth Circuit defines a "clear sailing" agreement as one "providing for the payment of attorneys' fees separate and apart from class funds," Bluetooth, 654 F.3d at 947, and also as one where "the defendant agrees not to oppose a petition for a fee award up to a specified maximum value."  Id. at 940 n. 6; Roes, 1-2 v. SFBSC Management, LLC, 944 F.3d 1035, 1049 (9th Cir. 2019) (defining a clear sailing agreement as "an arrangement where defendant will not object to a certain fee request by class counsel") (internal quotation marks omitted).

Notice and notification procedures. (See Dkt. 81, PAO at 19-22). As discussed above, the notice program was implemented by ILYM. Based on the record and its prior findings, the court finds that the Class Notice, (see Dkt. 83-1, Nava Decl., Exh. A, Class Notice), and the notice process fairly and adequately informed the class members of the nature of the action, the terms of the proposed settlement, the effect of the action and release of claims, and the class members' right to object to the proposed settlement. See Fed. R. Civ. P. 23(c)(2)(B).

      C.      Whether the Class Settlement Is Fair, Adequate and Reasonable.[7]

            1.      **Adequate Representation and Arm's-Length Negotiations**.

Rule 23(e)(2) requires the court to consider whether "the class representatives and class counsel have adequately represented the class" and whether the settlement "was negotiated at arm's length[.]" Fed. R. Civ. P. 23(e)(2)(A)-(B); see McKinney-Drobnis, 16 F.4th at 607. The court previously addressed the adequacy of counsel and the arm's-length negotiation factors in connection with preliminary approval. (See Dkt. 81, PAO at 10-11, 15). With respect to the latter factor, the court noted that "plaintiff's counsel diligently investigated the case, and the parties engaged in extensive formal and informal discovery, including Rule 30(b)(6) depositions." (Id. at 15). The court also noted that prior to mediation, defendant "provided detailed data regarding Settlement Class Members' compensation, hours worked, and other relevant payroll data," plaintiff "extensively analyzed the data to come up with various exposure models[,]" and plaintiff's counsel

---

[7] Prior to the 2018 amendment to Rule 23(e), courts applied the "Churchill" factors to assess whether a class settlement was fair, adequate, and reasonable: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004); see McKinney-Drobnis, 16 F.4th at 609 (noting that prior to the 2018 amendment to Rule 23(e), the Ninth Circuit instructed courts to consider the Churchill factors). Because "it is still appropriate for district courts to consider the [Churchill] factors in their holistic assessment of settlement fairness[,]" McKinney-Drobnis, 16 F.4th at 609 n. 4; see also 2018 Adv. Comm. Notes to Amendments to Rule 23 ("The goal of th[e] amendment [wa]s not to displace any factor" courts considered prior to the amendment, "but rather to focus . . . on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."), the court will consider them in evaluating the Rule 23(e)(2) factors.

"retained experts to analyze the data and calculate potential class-wide exposure for plaintiff's claims and defendant's defenses." (Id.). Based on the record before the court and the court's previous findings, the court finds these factors weigh in favor of granting final approval.

    2.    **The Relief Provided to the Class is Adequate**.

In evaluating whether the relief provided to the class is adequate, the court considers: (i) "the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C).

    a.    *Costs, Risks, and Delay*.

In granting preliminary approval, the court found that the class recovery was fair and reasonable, "particularly when viewed in light of the litigation risks in this case and the costs, risks, and delay of trial and appeal." (Dkt. 81, PAO at 16). The court recognized that the risks of continued litigation were significant, (id. at 17), including the likelihood that certain claims would not be certified. (Id. at 16). Under the circumstances, it is significant that class members will receive a monetary recovery "by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal quotation marks omitted); see also Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998) ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.") (internal quotation marks omitted). In short, the court finds these factors support approval of the settlement.

    b.    *Method of Distribution*.

Rule 23(e) directs the court to consider the "effectiveness of any proposed method of distributing relief to the class[.]" Fed. R. Civ. P. 23(e)(2)(C)(ii). Here, the settlement does not include a claims procedure. Instead, each class member will be entitled to a pro rata share of the net settlement amount without having to submit a claim form. (See Dkt. 80-1, Exh. 3, Amended Settlement Agreement at § IV.D.); (Dkt. 83, Memo. at 1, 6-7). Under the circumstances, the court

is persuaded that the method of distribution is fair and is intended "to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." 4 Newberg on Class Actions, § 13:53 (5th ed.) (2021 Supp.). Thus, this factor weighs in favor of approval.

      c. *Attorney's Fees*.

Rule 23(e) requires the court to consider "the terms of any proposed award of attorney's fees, including timing of payment" in determining whether the settlement is fair, adequate and reasonable. See Fed. R. Civ. P. 23(e)(2)(C)(iii). The Ninth Circuit has interpreted this factor "as imposing an obligation on district courts to examine whether the attorneys' fees arrangement shortchanges the class." McKinney-Drobnis, 16 F.4th at 607 (internal quotation marks omitted). In doing so, the court "must balance the proposed award of attorney's fees vis-a-vis the relief provided for the class[.]" Id. (internal quotation marks omitted). The court must assess the proposed award of attorney's fees by considering the Bluetooth factors. See id. at 608 ("If we conclude that the district court did not adequately consider the Bluetooth factors, and therefore did not adequately consider signs that the parties had negotiated an unreasonable amount of attorneys' fees in assessing settlement fairness in the first instance, then we must vacate and remand the Approval Order [in addition to the attorneys' fee award], so that the court may appropriately factor this into its Rule 23(e) analysis.") (internal quotation marks omitted) (brackets in original).

Here, application of the Bluetooth factors to the requested attorney's fees award does not undermine the fairness of the settlement. First, the settlement provides for up to $805,625, approximately 25% of the gross settlement amount, in attorney's fees. (See Dkt. 80-1, Exh. 3, Amended Settlement Agreement at § IV.E); (Dkt. 83, Memo. at 6). Thus, counsel would not be receiving a disproportionate share of the settlement. See Bluetooth, 654 F.3d at 947 (noting that a sign of collusion included "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded") (internal quotation marks omitted).

Second, although the Amended Settlement Agreement includes an implicit clear sailing

provision,[8] (see Dkt. 80-1, Exh. 3, Amended Settlement Agreement at § IV.E), any fees not awarded will not revert to defendant; instead, the fees will be added to the net settlement fund, from which payments to class members will be made. (See id.); (Dkt. 83, Memo. at 1) (noting settlement is non-reversionary); (Dkt. 81, PAO at 3). Thus, there is no issue as to whether the clear sailing provision undermines the settlement. See, e.g., Russell v. Kohl's Dep't Stores, Inc., 755 F.Appx. 605, 608 (9th Cir. 2018) (concluding that existence of clear sailing provision did not undermine settlement in part because class counsel's fees "would come from a common fund" and "fees not awarded to counsel . . . would not revert" to defendant).

        d.    *Additional Agreements*.

This factor considers any "agreement required to be identified under Rule 23(e)(3)[.]"[9] Fed. R. Civ. P. 23(e)(2)(C)(iv). No such agreements are at issue in this case.

        3.    **Equitable Treatment of Class Members**.

Rule 23(e)(2) requires the court to consider whether the settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "A distribution of relief that favors some class members at the expense of others may be a red flag that class counsel have sold out some of the class members at the expense of others, or for their own benefit." 4 Newberg on Class Actions, § 13:48 (5th ed.).

In granting preliminary approval, the court set forth the allocation plan, (Dkt. 81, PAO at 3), and did not find any issues of concern. (Id. at 3, 16-17). In short, this factor also weighs in favor of final approval.

        4.    **The Reaction of Class Members to the Proposed Settlement**.

The reaction of the class members to the proposed settlement has been very positive.

---

    [8] As noted earlier, one type of "clear sailing" agreement is where "the defendant agrees not to oppose a petition for a fee award up to a specified maximum value." Bluetooth, 654 F.3d at 940 n. 6; see also Roes, 944 F.3d at 1049 (defining a clear sailing agreement as "an arrangement where defendant will not object to a certain fee request by class counsel") (internal quotation marks omitted). The court considers the fee provision to be an implicit agreement subject to Bluetooth.

    [9] Rule 23(e)(3) provides that "[t]he parties seeking approval [of a settlement] must file a statement identifying any agreement made in connection with the proposal."

Significantly, there were no objections and there were only 32 requests for exclusion, or fewer than one percent of the 5,146 class members. (See Dkt. 83-1, Nava Decl. at ¶¶ 5, 12-13); (Dkt. 83, Memo. at 8, 16). The lack of objections and limited requests for exclusion further support approval of the settlement. See, e.g., Franco v. Ruiz Food Prods., Inc., 2012 WL 5941801, *14 (E.D. Cal. 2012) (finding this factor weighed in favor of approval where only two out of 2,055 class members – less than one percent – opted out, and there were no objections to the settlement); Gong-Chun v. Aetna Inc., 2012 WL 2872788, *16 (E.D. Cal. 2012) (settlement approved when less than two percent of the class members opted out and no objections were received); Barcia v. Contain-A-Way, Inc., 2009 WL 587844, *4 (S.D. Cal. 2009) (finding this factor weighed in favor of approval of settlement when there were only 56 opt-outs out of the 2,385 class members and there were no objections).

In short, the court finds that the settlement is fair, reasonable, and adequate, and not the product of collusion.

II. ATTORNEY'S FEES, COSTS, AND SERVICE AWARD.

A. Attorney's Fees.

Rule 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Attorney's fees in class actions are determined "using either the lodestar method or the percentage-of-recovery method." In re Hyundai, 926 F.3d at 570. The court's discretion in choosing between these two methods "must be exercised so as to achieve a reasonable result." Bluetooth, 654 F.3d at 942; see id. (In class actions where a "settlement produces a common fund . . . courts have discretion to employ either the lodestar method or the percentage-of-recovery method."); In re Hyundai, 926 F.3d at 570. The lodestar method is typically utilized when the relief obtained is "not easily monetized," such as when injunctive relief is part of the settlement. See Bluetooth, 654 F.3d at 941. The percentage-of-recovery method is typically used when a common fund is created. See id. at 942. "Whichever method is chosen, courts often employ the other method as a cross-check that the award is reasonable." In re Apple Inc. Device Performance Litig., 50 F.4th 769, 784 (9th Cir. 2022).

Under the lodestar method, the court multiplies the number of reasonable hours expended by a reasonable hourly rate. See In re Hyundai, 926 F.3d at 570. Once the lodestar has been calculated, the court may "adjust the resulting figure upward or downward to account for various factors, including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment[.]" Id. (internal citation omitted). However, "adjustments [to the lodestar calculation] are the exception rather than the rule." Fischel v. Equitable Life Assurance Society of U.S., 307 F.3d 997, 1007 (9th Cir. 2002) (internal quotation marks omitted); Johnson v. MGM Holdings, Inc., 794 F.Appx. 584, 586 (9th Cir. 2019) (same).

Under the "percentage-of-the-fund" or "percentage-of-recovery" method, the "court simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee, using 25% as a benchmark." In re Hyundai, 926 F.3d at 570 (internal quotation marks omitted). The 25% benchmark "can be adjusted upward or downward, depending on the circumstances." Id.; Bluetooth, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."); Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990) ("The benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors."). In determining whether to depart from the 25% benchmark, courts consider "all of the circumstances of the case[,]" including: (1) the results achieved for the class; (2) the risk of litigation; (3) the skill required and quality of the work; (4) the contingent nature of the fee; and (5) awards in similar cases. See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048-50 (9th Cir. 2002); Viceral v. Mistras Grp., Inc., 2017 WL 661352, *3 (N.D. Cal. 2017) (utilizing similar factors); In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 955 (9th Cir. 2015) (explaining that "there are no doubt many factors that a court could apply in assessing an attorneys' fees award" and that "Vizcaino does not purport to establish an exhaustive list").

Here, the court will utilize the percentage of fund method, as it is the most likely to achieve

a reasonable result. See Bluetooth, 654 F.3d at 942 ("Though courts have discretion to choose which calculation method they use, their discretion must be exercised so as to achieve a reasonable result."). Under the circumstances, the court finds that the requested $805,625 in attorney's fees, (Dkt. 82, Fee Motion at 1), which equate to the 25% benchmark, constitute a reasonable fee. See In re Hyundai, 926 F.3d at 570-71 (recognizing 25% benchmark and noting that the percentage method is "a rough approximation of a reasonable fee"); Bluetooth, 654 F.3d at 942 (noting benchmark is a reasonable fee award).

  B. Costs.

Class counsel seek $42,543.03 in costs. (See Dkt. 82, Fee Motion at 1); (Dkt. 83, Memo. at 5). The court finds that the costs incurred by class counsel over the course of this litigation are reasonable, and therefore awards a total of $42,543.03 in costs.

  C. Class Representative Service Award.

"[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments." Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir. 2003); see Wren v. RGIS Inventory Specialists, 2011 WL 1230826, *31 (N.D. Cal. 2011) ("It is well-established in this circuit that named plaintiffs in a class action are eligible for reasonable incentive payments, also known as service awards.").

In its order granting preliminary approval of the settlement, the court undertook an examination of the fairness and adequacy of the service award at issue, applying the careful scrutiny required in this Circuit. (See Dkt. 81, PAO at 18-19); see also Radcliffe v. Experian Info. Sols. Inc., 715 F.3d 1157, 1163 (9th Cir. 2013) (instructing "district courts to scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives"). Based on its review of the record, the court determined that a service award of $5,000 to Ball was reasonable. (See Dkt. 81, PAO at 19). The court sees no reason to depart from its previous determination.

**CONCLUSION**

Based on the foregoing, IT IS ORDERED THAT:

1. Plaintiff's Motion for Final Approval of Class Action Settlement **(Document No. 83)** is

**granted** upon the terms and conditions set forth in this Order.

2. Plaintiff's Motion for Attorneys' Fees, Litigation Expenses, Administration Costs, and Class Representative Service Award **(Document No. 82)** is granted as set forth in this Order.

3. The court hereby **grants final approval** of the parties' Amended Settlement Agreement (Document No. 80-1, Exh. 3). The court finds that the Amended Settlement Agreement is fair, adequate and reasonable, appears to be the product of arm's-length and informed negotiations, and treats all members of the class fairly. The parties are ordered to perform their obligations pursuant to the terms of the Amended Settlement Agreement and this Order.

4. The settlement classes are certified under Federal Rule of Civil Procedure 23(c) as defined in § II.2. of the Amended Settlement Agreement and this Order.

5. The form, manner, and content of the Class Notice meet the requirements of Federal Rule of Civil Procedure 23(c)(2).

6. Plaintiff Jade Ball shall be paid a service payment of $5,000.00 in accordance with the terms of the Amended Settlement Agreement and this Order.

7. Class counsel shall be paid $805,625.00 in attorney's fees, and $42,543.03 in costs in accordance with the terms of the Amended Settlement Agreement and this Order.

8. The Claims Administrator, ILYM, shall be paid $44,894.00 for its fees and expenses in accordance with the terms of the Amended Settlement Agreement and this Order.

9. The LWDA shall be paid $75,000.00 pursuant to the Amended Settlement Agreement.

10. All class members who did not validly and timely request exclusion have released their claims, as set forth in the Amended Settlement Agreement, against any of the released parties (as defined in the Amended Settlement Agreement).[10]

11. Except as to any class members who have validly and timely requested exclusion, this action is dismissed with prejudice, with all parties to bear their own fees and costs except as set forth herein and in the prior orders of the court.

---

[10] All class members that submitted FLSA Opt-In Forms have released their FLSA claims as set forth in the Amended Settlement Agreement.

12. Without affecting the finality of this Order in any way, the court hereby retains jurisdiction over the parties, including class members, for the purpose of construing, enforcing, and administering the Order and Judgment, as well as the Amended Settlement Agreement itself.

13. Judgment shall be entered accordingly.

Dated this 21st day of July, 2023.

/s/<br>
Fernando M. Olguin<br>
United States District Judge